# In the United States Court of Federal Claims

No. 23-1633C

(Filed: October 8, 2024)

| | |
|---|---|
| **CARL L. WHELESS,** | ) |
| | ) |
| *Plaintiff,* | ) |
| | ) |
| **v.** | ) |
| | ) |
| **THE UNITED STATES,** | ) |
| | ) |
| *Defendant.* | ) |
| | ) |

*Michael Erich Silverman*, Michael E. Silverman, Esq., Midway, GA, for Plaintiff.

*Evan Wisser*, U.S. Department of Justice, Civil Division, Washington, D.C., for Defendant. With him on the briefs were *Brian M. Boynton*, Principal Deputy Assistant Attorney General, Civil Division, *Patricia M. McCarthy*, Director, and *L. Misha Preheim*, Assistant Director. Of counsel was *Major Alane Ballweg*, Litigation Attorney, Military Personnel Litigation Branch, U.S. Army Legal Services Agency.

## **OPINION AND ORDER**

Plaintiff, Carl L. Wheless, seeks monetary and non-monetary relief, including the correction of his military records, based on a favorable decision of the Army Board for the Correction of Military Records ("ABCMR" or the "Board") that the Deputy Assistant Secretary of the Army ("DASA") rejected. Defendant, the United States, moves to dismiss Mr. Wheless's complaint for lack of jurisdiction due to the statute of limitations and for failure to state a claim on justiciability grounds. For the reasons explained below, the Court denies the government's motion.

## I.    FACTUAL AND PROCEDURAL BACKGROUND[1]

In September 2013, an informal Physical Evaluation Board ("PEB") convened and recommended that Mr. Wheless receive a permanent disability retirement.  ECF No. 1-2 at 4.[2]  In March 2014, the Army issued orders releasing Mr. Wheless "from his assignment and retiring him effective 28 May 2014 because of physical disability incurred while entitled to basic pay and under conditions permitting his retirement for permanent physical disability."  *Id.* at 6.  Earlier in May, however, Mr. Wheless had applied for Continuation on Active Duty ("COAD"), which enables military servicemembers who have been determined medically unfit for duty to nevertheless remain on active duty status (apparently, at least in part, so that they can be eligible for particular monetary benefits upon a later retirement).  ECF No. 1-2 at 65 (Army Regulation ("AR") 635-40, Chapter 6 (Feb. 8, 2006)).[3]  COAD would have permitted Mr. Wheless to use his accumulated "leave balance" and "could have begun terminal leave immediately based on a 1 October 2014 length of service retirement date."  ECF No. 1 ("Compl.") ¶ 4.a.

On June 26, 2014, the Army's Human Resources Command effectively denied Mr. Wheless's request.  *Id.* at 32.

On July 18, 2014, following several amended separation orders, Mr. Wheless "was honorably retired due to permanent (enhanced) disability under the provisions of [AR] 635-40 (Physical Evaluation for Retention, Retirement, or Separation), chapter 4."  ECF No. 1-2 at 7.

On July 18, 2018, Mr. Wheless applied to the ABCMR to correct his military records to reflect a "[r]etroactive reinstatement in the U.S. Army from [July 22, 2014] thru

---

[1] As explained *infra*, the Court assumes the facts alleged in Mr. Wheless's complaint (including its attachments) are true for the purposes of resolving the government's pending motion.

[2] Page number citations are to the ECF page number electronically stamped on the top of each page of the PDF document.

[3] *See also* https://www.hrc.army.mil/content/Continuation%20on%20Active%20Duty%20(COAD)%20Program [https://perma.cc/G74A-S3XF] ("The COAD Program is for Soldiers that have been determined unfit by the Physical Disability Evaluation System but may continue on Active Duty as an exception to policy IAW AR 635-40 Chapter 6.  The objective of the program is to conserve manpower by the effective use of needed skills or experience.  Normally, the length of continuation will be for any period of time up to the last day of the month in which the Soldier attains 20 years of Active Federal Service (AFS) for the purposes of qualifying for length of service retirement under Title 10, United States Code, Section 3911 or 3914.").

[September 30, 2014]" which relief would yield him a "length of service (20 year) retirement on [October 1, 2014]," amongst other monetary benefits. ECF No. 1-2 at 14. Mr. Wheless asserted that the Army's reason for effectively denying his COAD request was based on factually incorrect information. *Id.* at 20.

While Mr. Wheless recognized that he was beyond the ordinary three-year limitation to engage the ABCMR, 10 U.S.C. § 1552(b), he argued that "it is in the best interest of justice for the Board to consider [his] case," ECF No. 1-2 at 20. In that regard, the ABCMR "may excuse a failure to file within three years after discovery if it finds it to be in the interest of justice." 10 U.S.C. § 1552(b). In requesting the Board to excuse his tardiness, Mr. Wheless asserted that he was unaware that the ABCMR could "review [his] case," ECF No. 1-2 at 19, at least in part because the Army told him, in denying his COAD request, that "[t]here are no other appeals or waivers for retention." ECF No. 1-2 at 31.

On April 17, 2020, the ABCMR issued a decision. ECF No. 1-2 at 2–13. As to the timeliness issue, the ABCMR "conducted a substantive review of this case and determined it is in the interest of justice to excuse the applicant's failure to timely file." *Id.* at 2–3. On the merits, the ABCMR also sided with Mr. Wheless:

> After review of the application and all evidence, the Board determined there is sufficient evidence to grant relief. The applicant's contentions, his military record, counsel's petition, and regulatory guidance were carefully considered. The governing regulation provides that at separation the service member's record will be used to enter accurate information when completing their DD Form 214. The Board agreed the applicant submitted a COAD application on 14 May 2014 and on that date he met the eligibility criteria[,] thereby warranting correction in this case.

ECF No. 1-2 at 10. The ABCMR's decision to grant "full relief" was unanimous. *Id.*

On May 17, 2021, the ABCMR notified Mr. Wheless that its "members unanimously recommended full relief" but that "after reviewing the findings, conclusions, and Board member recommendations, the [DASA] found there is insufficient evidence to grant relief." ECF No. 1-2 at 1.[4]

---

[4] A January 18, 2023, letter from the Army to a member of Congress refers to a decision of the

On September 22, 2023, Mr. Wheless filed his complaint in this Court, claiming that the Army improperly failed to implement the ABCMR's decision.  Compl. ¶¶ 57–58 (alleging that "[t]he findings of the ABCMR in this case conferred a right to both back pay and concurrent retirement and disability pay upon Plaintiff" and that the [DASA] "unlawfully rejected the ABCMR's findings").  Mr. Wheless seeks a monetary judgment for "back pay and future pay," as well as an order correcting his Army records.  Compl. at 16 ("Prayer for Relief").

On November 20, 2023, the government filed a motion to dismiss pursuant to Rule 12(b)(1) and Rule 12(b)(6) of the Rules of the United States Court of Federal Claims ("RCFC").  ECF No. 5 ("Def. MTD").  The government argues that because Mr. Wheless seeks to modify his discharge date and because he "was discharged in 2014, more than nine years before this action was filed[,] . . . his complaint falls outside the statute of limitations and must be dismissed."  *Id.* at 1.  Alternatively, the government maintains that Mr. Wheless's complaint must be dismissed for failure to state a claim because the ABCMR "expressly relied upon the board's authority to grant relief in the interest of justice."  *Id.*  According to the government, the "[r]eview of such claims is not justiciable in this Court."  *Id.*  Mr. Wheless filed his response in opposition to the government's motion on December 7, 2023, ECF No. 6 ("Pl. Resp."), and the government filed its reply brief on December 13, 2023, ECF No. 7 ("Def. Dep.").  On February 28, 2024, the Court held oral argument on the government's motion.  ECF No. 10 ("Tr.")

## II.   JURISDICTION AND STANDARD OF REVIEW

"The Military Pay Act provides that active duty uniformed servicemembers 'are entitled to the basic pay of the pay grade to which assigned or distributed.'"  *Jordan v. United States*, 158 Fed. Cl. 440, 449 n.8 (2022) (quoting 37 U.S.C. § 204(a)).  "[M]any provisions of the Military Pay Act are money-mandating, and this Court generally possesses jurisdiction over Military Pay Act claims."  *Id.* at 449 (first citing *James v. Caldera*, 159 F.3d 573, 581 (Fed. Cir. 1998) ("As far as military personnel are concerned, 37 U.S.C. § 204 (1994) serves as a money-mandating statute."); and then *Antonellis v. United States*, 723 F.3d 1328, 1331 (Fed. Cir. 2013) ("We have long recognized that the Military Pay Act 'provides for suit in [the Court of Federal Claims] when the military, in violation of the

---

"*Acting* Deputy Assistant Secretary of the Army (Review Boards)," directing "no change to SSG (Ret) Wheless'[s] Department of the Army records."  ECF No. 1-2 at 64 (emphasis added).

Constitution, a statute, or a regulation, has denied military pay.'" (quoting *Dysart v. United States*, 369 F.3d 1303, 1315 (Fed. Cir. 2004)))).

The government does not dispute — and this Court finds — that we generally have jurisdiction to decide Mr. Wheless's money-mandating claim pursuant to the Tucker Act, 28 U.S.C. § 1491(a). *See Keltner v. United States*, 165 Fed. Cl. 484, 500 (2023) ("Military pay cases — including disability retirement cases — involve money-mandating claims . . . ."); *Hutchinson v. United States*, 168 Fed. Cl. 504, 519 (2023) (discussing 10 U.S.C. § 1414);[5] *Martinez v. United States*, 333 F.3d 1295, 1315 n.4 (Fed. Cir. 2003) (discussing 10 U.S.C. § 1552).[6]

On the other hand, "[t]he Court of Federal Claims may exercise jurisdiction over a claim against the United States only if the plaintiff files suit within six years of when the claim accrues." *Jordan*, 158 Fed. Cl. at 445 (citing 28 U.S.C. § 2501 ("Every claim of which the United States Court of Federal Claims has jurisdiction shall be barred unless the petition thereon is filed within six years after such claim first accrues.")). The United States Supreme Court has "long interpreted" this Court's statute of limitations as "absolute" and "jurisdictional." *John R. Sand & Gravel Co. v. United States*, 552 U.S. 130, 134 (2008). Accordingly, our statute of limitations is not subject to equitable tolling. *Id.* at 133–39 (discussing the history of the Court of Federal Claims' statute of limitations and concluding that it does not permit equitable tolling); *see also Young v. United States*, 529 F.3d 1380, 1384 (Fed. Cir. 2008) ("[E]quitable tolling . . . is foreclosed by *John R. Sand & Gravel*, wherein the Court held that the Tucker Act's statute of limitations is in the 'more absolute' category that cannot be waived or extended by equitable considerations." (quoting *John R. Sand & Gravel Co.*, 552 U.S. at 133–34)).

A plaintiff "bears the burden of establishing the court's jurisdiction over its claims by a preponderance of the evidence." *Trusted Integration, Inc. v. United States*, 659 F.3d 1159, 1163 (Fed. Cir. 2011). To determine whether jurisdiction is proper, this Court generally "must accept as true all undisputed facts asserted in the plaintiff's complaint and draw all reasonable inferences in favor of the plaintiff." *Trusted Integration*, 659 F.3d at 1163. This includes establishing that the complaint was timely filed pursuant to the statute of limitations. *Alder Terrace, Inc. v. United States*, 161 F.3d 1372, 1376–77 (Fed. Cir. 1998). The Court is not limited to the pleadings, however, when a motion to dismiss

---

[5] *Cf. Deemer v. United States*, 126 Fed. Cl. 619, 624 (2016) (concluding that 10 U.S.C. § 1414 was not money-mandating as to the plaintiff in that case).

[6] The Court addresses *Martinez* in more detail *infra*, see Section III.A.

disputes jurisdictional facts. *Freeman v. United States*, 875 F.3d 623, 627 (Fed. Cir. 2017) ("When . . . a motion to dismiss 'challenges the truth of jurisdictional facts,' the Court of Federal Claims 'may consider relevant evidence in order to resolve the factual dispute.'" (quoting *Banks v. United States*, 741 F.3d 1268, 1277 (Fed. Cir. 2014))); *see also Superior Waste Mgmt. LLC v. United States*, 169 Fed. Cl. 239, 260 (2024) (noting that "[t]he Federal Circuit also has recently reaffirmed 'the generally recognized facial/factual distinction in the treatment of jurisdictional challenges'" (quoting *Mitek Sys., Inc. v. United Servs. Auto. Ass'n*, 34 F.4th 1334, 1341 n.2 (Fed. Cir. 2022)).

Our appellate court, the United States Court of Appeals for the Federal Circuit, recently explained the RCFC 12(b)(1) analysis as follows:

> Where a RCFC 12(b)(1) motion "challenges the truth of jurisdictional facts alleged in the complaint, 'the court accepts as true all uncontroverted factual allegations in the complaint, and construes them in the light most favorable to the plaintiff.'" Where a RCFC 12(b)(1) motion "simply challenges the court's subject matter jurisdiction based on the sufficiency of the pleading's allegations — that is, the movant presents a 'facial' attack on the pleading — then those allegations are taken as true and construed in a light most favorable to the complainant." To the extent our analysis does not rely on any controverted facts, this distinction is immaterial. *See Creative Mgmt. Servs.*, 989 F.3d at 961 n.4.

*Chemehuevi Indian Tribe v. United States*, 104 F.4th 1314, 1320–21 (Fed. Cir. 2024) (first quoting *Creative Mgmt. Servs., LLC v. United States*, 989 F.3d 955, 961 n.4 (Fed Cir. 2021); and then *Cedars-Siani Med. Ctr. v. Watkins*, 11 F.3d 1573, 1583 (Fed. Cir. 1993)).[7]

In this case, the government does not challenge any jurisdictional facts. Def. MTD at 2 n.1 (reserving "the right to dispute any factual allegations if the Court denies our motion to dismiss"). Accordingly, as noted *supra*, this Court presumes the facts contained

---

[7] "Whether a claim brought under the Tucker Act (28 U.S.C. § 1491) is barred by the statute of limitations is a question of law that may be based on underlying fact findings." *Chemehuevi*, 104 F.4th at 1321 (citing *Katzin v. United States*, 908 F.3d 1350, 1358 (Fed. Cir. 2018)). The Federal Circuit expressly noted that it "review[s] the Court of Federal Claims' [jurisdictional] factual findings for clear error." *Id.* (citing *Katzin*, 908 F.3d at 1358).

in Mr. Wheless's complaint (as supplemented by its attachments) are true for the purposes of resolving the government's motion to dismiss.

## III.   DISCUSSION: THE COURT DENIES THE GOVERNMENT'S MOTION TO DISMISS

Before determining when the statute of limitations clock began to tick, this Court must accurately characterize Mr. Wheless's claims.  The same is true for justiciability.

According to the government, Mr. Wheless's "complaint plainly presents a claim for back pay originating with Mr. Wheless's discharge."  Def. MTD at 6.  Because "[h]e invokes 37 U.S.C. § 204(a)(1) and 10 U.S.C. § 1414(b)(1) as the money-mandating statutes supporting this Court's jurisdiction[,]" the government asserts that his "claim thus accrued when he was discharged on July 18, 2014, after which he asserts he should have been receiving base pay which was not paid" or "[a]t the latest, . . . on September 30, 2014, which is when he asserts he should be been receiving concurrent retirement and disability pay which was not paid."  *Id.* at 7.  The government concludes that Mr. Wheless's "complaint filed on September 22, 2023[,] was three years too late."  *Id.*

Mr. Wheless, by contrast, alleges "that his claim only accrued on May 17, 2021, when the DASA denied his request to correct his military records."  Def. MTD at 4; *see* Compl. ¶ 45.  The government responds that "Federal Circuit precedent is clear that the Army's denial of his record correction request does not cause a new claim to accrue or otherwise alter the accrual date for his claim related to his discharge."  *Id.*

The Court agrees with the government's implicit framing of the salient legal question:  did the six-year statute of limitations period begin to run back in July or September of 2014 — and, thus, Mr. Wheless's claim is time-barred — or did the clock start from the Army's decision not to implement the unanimous ABCMR decision and, thus, his claim is timely?  For the reasons explained *infra*, this Court agrees with Mr. Wheless that his claim his timely and that his claim is justiciable.

### A.  The Statute of Limitations Does Not Bar Mr. Wheless's Claim Because It Is Based on the Army's Refusal to Implement the ABCMR's Decision

This Court must first determine the precise nature or basis of Mr. Wheless's claim. In making that determination, the United States Supreme Court instructs that "a court should look to the substance, or gravamen, of the plaintiff's complaint."  *Fry v. Napoleon Cmty. Sch.*, 580 U.S. 154, 165 (2017); *see Ponder v. United States*, 117 F.3d 549, 553 (Fed. Cir. 1997) (considering "[t]he gravamen of appellants' complaint"); *Jim Arnold Corp. v.*

*Hydrotech Sys., Inc.*, 109 F.3d 1567, 1574 (Fed. Cir. 1997) (noting that a complaint must be "[v]iewed in its entirety"); *Wheeler v. United States*, 3 Cl. Ct. 686, 688 (1983) ("The court is not bound by the labels selected by a party in characterizing an action.  The court must conduct a careful examination of a party's assertions to determine their true character." (citing *Mason v. United States*, 222 Ct. Cl. 436, 442, 615 F.2d 1343, 1346 (1980))).

Here, Mr. Wheless's complaint consistently makes clear that he is challenging the government's refusal to implement the ABCMR's decision in his favor.  Compl. ¶ 46 ("The [DASA] can hardly be heard to say that the record in this case did not include 'substantial evidence' to grant relief."); ¶ 47 ("The DASA acted arbitrarily and capriciously in denying Mr. Wheless'[s] relief where he rejected the findings and recommendations of the Board when there was no evidence in the record that contradicted the Board's findings."); ¶¶ 48–51 (asserting that the Secretary of the Army cannot, as occurred here, arbitrarily refuse to follow a corrections board).  Although Mr. Wheless certainly references particular money-mandating statutes, his claim fundamentally is "*that the ABCMR's findings and recommendations vested him with a right to COAD* and, therefore, to back pay under 37 U.S.C. § 204(a)(1) and retirement pay pursuant to 10 U.S.C. § 1407 (20-year retirement) and § 1414(b)(1) (Concurrent Retirement Disability Pay)."  *Id.* ¶ 52 (emphasis added).  Indeed, Mr. Wheless asserts that the ABCMR's decision is what "formally establish[es] this Court's jurisdiction under the Tucker Act."  *Id.*

Although Mr. Wheless's complaint alleges only a single "cause of action," Compl. at 14–16 (¶¶ 54–61) — and while he again quotes several money-mandating statutes — Mr. Wheless expressly focuses on the ABCMR's decision as the source of his claim.  For example, Mr. Wheless asserts that "[t]he findings of the ABCMR in this case conferred a right to both back pay and concurrent retirement and disability pay upon Plaintiff."  *Id.* ¶ 57.  He further asserts that "[t]he DASA unlawfully rejected the ABCMR's findings," *id.* ¶ 58, and that "the Army's decision amounts to unlawful conduct [that] has rendered the ABCMR's decision meaningless."  *Id.* ¶ 60.  The last paragraph of Mr. Wheless's complaint before the "Prayer for Relief" sums up the theory of his case: "the DASA's arbitrary refusal to follow the fact finding of the ABCMR where all the evidence supports the board's findings is unlawful."  *Id.* ¶ 61.

Accordingly, this Court accepts Mr. Wheless's characterization of his claim, as articulated in his response brief filed in opposition to the government's motion: "[t]he dispositive issue here is whether the DASA's refusal to accept the ABCMR's findings . . . was arbitrary, capricious[,] and contrary to the law."  Pl. Resp. at 2.  The only remaining

question is whether such a claim is cognizable in this Court.  If it is, the claim manifestly cannot accrue — and Mr. Wheless is correct that the statute of limitations did not begin to run — until the Army notified Mr. Wheless that it would not implement the ABCMR's decision.  This Court concludes that Mr. Wheless's claim is proper, with a great deal of jurisprudential history supporting it.  Demonstrating that, however, requires that we trace a fair amount of precedent from our appellate court and its predecessor tribunal, the United States Court of Claims.[8]

The first case on point is *Eicks v. United States*, 145 Ct. Cl. 522, 172 F. Supp. 445 (1959).  In *Eicks*, the plaintiff, Casper H. Eicks, "was retired for disability as of May 1, 1994," but he did not receive notice of the retirement order until May 14, 1944.  145 Ct. Cl. at 524.  In the interim, on May 12, 1944, Eicks applied to use his accrued leave because the use of such leave "would have postponed plaintiff's retirement date with service pay higher than retirement pay and would have given plaintiff the advantage of longer service and consequently an increased base upon which to apply his retirement percentage of service pay." *Id.*[9]  The Navy denied Eicks's request "on the grounds that his retirement [already] had become effective May 1, 1944." *Id.*  More than ten years later, "[o]n July 12, 1954, the plaintiff filed an application with the Navy Board for Correction of Navy Records for a correction so as to show that he continued on active duty through August 30, 1944" — effectively seeking "the allowance of his unused leave during active service." *Id.*  The then-governing statute provided for civilian record correction boards, which were "authorized to correct any military or naval record where in their judgment such action is necessary to correct an error or to remove an injustice." *Id.* at 524 n.1 (quoting Legislative Reorganization Act of 1946, Pub. L. No. 79-601, § 207, 60 Stat. 837).  The "substance" of that statute was later "reenacted" at 10 U.S.C. § 1552. *Id.*

The Navy's records correction board recommended that Eicks receive the full relief he sought — such that his records would reflect a "transfer[] to the retired list by reason of physical disability effective 1 September 1944," 145 Ct. Cl. at 525 n.2 — but the

---

[8] "In *South Corp. v. United States*, 690 F.2d 1368, 1370–71 (Fed. Cir. 1982) (in banc), this court adopted as binding precedent the prior decisions of our predecessor courts, the United States Court of Claims and the United States Court of Customs and Patent Appeals." *Romane v. Def. Cont. Audit Agency*, 760 F.2d 1286, 1288 (Fed. Cir. 1985); *see also Middleton v. Dep't of Def.*, 185 F.3d 1374, 1379 n.2 (Fed. Cir. 1999) ("The decisions of the Court of Claims are binding precedent for our court's panels." (citing *South Corp.*, 690 F.2d at 1370)).

[9] Mr. Wheless similarly alleges that he could have used accumulated leave had his COAD request properly been approved.  Compl. ¶ 4.a.

Secretary of the Navy "disapproved the *recommendation* of the Board" (on October 5, 1955). 145 Ct. Cl. at 525 (emphasis added). Once Eicks received notice from the board "that correction was denied," Eicks filed a petition with the Court of Claims. *Id.* Eicks "assert[ed] his right to recover was established by the said findings of the Board." *Id.* at 526. The Court of Claims held as follows:

> As the Secretary, under the statute, has authority to correct a record acting through the civilian board, we cannot conclude that the finding of the Board compels the correction. We do think, as to record correction, that *the controlling issue is whether the Secretary's action in disapproving was arbitrary and capricious. If it was, the record should have been corrected*.

*Id.* (emphasis added). This teaches us two things: (1) a service secretary has the power to reject a record correction board's decision or recommendation, and (2) a secretary's decision is reviewable, in turn, by this Court pursuant to the Tucker Act.

The government, however, asserted that the six-year statute of limitations barred "any recovery for the period between plaintiff's retirement and September 30, 1949." *Eicks*, 145 Ct. Cl. at 526 & n.5 (citing 28 U.S.C. §§ 2401, 2501). While Eicks had not filed his suit until December 2, 1955, he argued that "the right to recover . . . arises . . . from the arbitrary and capricious action of the Secretary of the Navy in refusing correction of plaintiff's record." *Id.* at 526. The Court of Claims rejected the government's position and instead agreed Eicks's claim was timely: "We think this present cause of action arose on the refusal of the Board, after the Secretary's disapproval, to correct plaintiff's record. It was therefore in time." *Id.* at 526–27 & n.7 (citing cases). Furthermore, according to the Court of Claims, "[i]t is within the jurisdiction of this court to correct the action of the Board if it results from the Secretary's arbitrary disapproval of the Board's *decision and recommendation*." *Id.* at 527 (emphasis added) (explaining that "[i]f the contentions of plaintiff are correct, he is entitled to back pay from the United States of over $3,000"). Note that the Court of Claims variously labeled the Navy board's conclusion as a "recommendation," 145 Ct. Cl. at 525, a "finding," *id.* at 526, and a "decision and recommendation," *id.* at 527.

Ultimately in *Eicks*, the Court of Claims concluded that the plaintiff had been entitled to use his accumulated leave:

> Even though the Navy Regulations in effect at the time of plaintiff's retirement asserted that leave was 'a privilege and

not a right,' its policy was to grant the accumulated leave in advance of retirement.  If the order of January 27, 1944, relieving plaintiff from active duty had been given him promptly, he could have asked for his accumulated leave to begin on his discharge from the hospital.  It would seem under the policy of the Manual that such a request would have been granted.

It follows from our conclusion that the use of accumulated leave by Navy officers was a matter of right that officers about to be retired are entitled to such leave before retirement.  The officer should have the opportunity to decide where and how he should use his leave.  Plaintiff here was deprived of that right.  The action of the Secretary of the Navy in refusing the correction of the record was unjustified.  The correction should have been made.  Plaintiff's motion for summary judgment is granted and defendant's like motion is denied.  The plaintiff is entitled to recover on his claim and judgment is entered to that effect with the amount of recovery to be determined . . . .

*Eicks*, 145 Ct. Cl. at 528–30 (internal footnotes omitted).

Several subsequent decisions over the next ten years followed the reasoning of the Court of Claims in *Eicks*.  *See Betts v. United States*, 145 Ct. Cl. 530, 534, 172 F. Supp. 450, 453–54 (Ct. Cl. 1959) (awarding "money damages" where the court determined that an Assistant Secretary of the Army had arbitrarily and capriciously "denied, without comment, the plaintiff's application for the correction of his military records" after a corrections board had found in favor of the servicemember); *Friedman v. United States*, 159 Ct. Cl. 1, 23, 310 F.2d 381, 395 (1962) (explaining, in dicta, that *Eicks* and similar cases "dealt with implementation of a favorable board decision and in that sense the claim was, and had to be, founded on the board's own action"); *Hertzog v. United States*, 167 Ct. Cl. 377, 388 (1964) (holding that "the Secretary's action in overturning the Correction Board's recommendation was arbitrary and capricious").

*Eicks* and its progeny clearly support Mr. Wheless's position in this case, and collectively teach that:  (1) a plaintiff may challenge in this Court, pursuant to the Tucker Act, a service secretary's rejection of a correction board's finding, decision, or

recommendation (however characterized so long as there are monetary implications); and (2) the statute of limitations begins to run from the service secretary's decision.

But do those decisions from the middle of the last century remain good law?  The answer is yes.  Thirteen years after *Eicks*, the Court of Claims continued to rely upon that decision.  *See, e.g.*, *Duhon v. United States*, 198 Ct. Cl. 564, 570, 461 F.2d 1278, 1281–82 (1972) (explaining that, in *Eicks*, the court "held that the Secretary of the Navy's refusal to correct the officer's record . . . was arbitrary and capricious" notwithstanding that the "Navy Regulations in effect at the time of the officer's retirement" provided that the leave he requested "was 'a privilege and not a right'").  Indeed, as discussed below, *Eicks* has never been overruled despite the government's specific request that the Federal Circuit do so.

In arguing that this Court should reject the application of *Eicks* to Mr. Wheless's case, the government primarily relies on two decisions that are themselves more than 40 years old:  *Brownfield v. United States*, 218 Ct. Cl. 477, 589 F.2d 1035 (1978), and *Holbrook v. United States*, 229 Ct. Cl. 604, 606 (1981).  *See* Def. Rep. at 4.  Each is distinguishable or inapposite; neither overrules *Eicks*.

To be sure, *Brownfield* contains some favorable language for the government insofar as that decision *does* reject the notion that "a new cause of action" *always* arises "upon the Secretary's rejection of a favorable Board recommendation."  589 F.2d at 1039 n.3.  There, in a footnote, the Court of Claims explained that "*[f]or the reasons given in the text*, th[e] action by the Secretary did *not* create a new cause of action."  *Id.* (emphasis added).  But *Brownfield* nowhere purports to reverse, disavow, or otherwise modify *Eicks*.  And, indeed, the court's *holding* in *Brownfield* is inapplicable here — and the case is distinguishable from *Eicks* — for the simple reason that in *Brownfield* a much earlier corrections board already had rejected the plaintiff's claim.  *Id.* at 1039.  In other words, in *Brownfield*, the plaintiff's "*renewed* application to the *second* Correction Board . . . was but an attempt to secure discretionary relief long after his claim had been finally rejected" by the first correction board.  *Id.* at 1039 (emphasis added).  As such, the second board decision "did not extend his time for filing suit."  *Id.*  In short, *Brownfield* stands for the straightforward proposition that a plaintiff cannot "convert a claim based on the Secretary's refusal to make the same correction in plaintiff's record that plaintiff sought but was denied a decade earlier, into a new claim that first accrued [much later] in 1975." *Id.*

Accordingly, the *ratio decidendi*[10] of *Brownfield* is merely that a plaintiff cannot press a claim in this Court that could have been, but was not, brought here in a timely manner after an initial corrections board decision just because the plaintiff later successfully obtained a favorable board decision on the very same claim (but that was subsequently rejected by a service secretary).  In other words, the fact that a claimant persuades a second corrections board to see his or her matter differently does not restart the limitations clock afresh.  To similar effect is the Court of Claims decision in *Dayley v. United States*, addressing *Friedman*, *supra*, and other cases:

> [W]e do not modify, or depart from, our holding[] in . . . *Friedman* . . . and other cases, that, once there is a final Board decision, *a subsequent administrative hearing or determination does not deprive the earlier decision of finality*, toll the running of limitations, *or commence a new limitations period*.  Those were cases in which the later request for a hearing or for a new decision came to a different tribunal or, if to the same tribunal,

---

[10] "The traditional view is that a decision's holding consists of 'the rule that is logically entailed by the reasoning that was necessary to reach the outcome on the basis of the legally salient facts and the arguments of the parties.'"  *United States v. Ayala*, 711 F. Supp. 3d 1333, 1349 (M.D. Fla. 2024) (quoting Lawrence B. Solum, *Originalist Theory and Precedent: A Public Meaning Approach*, 33 Const. Comment. 451, 459 (2018)).  As explained by the United States District Court for the District of Columbia:

> It is an elementary principle that what binds a later court is an earlier court's *ratio decidendi*—that is, the rationale employed by an earlier court that was "necessary for the decision of [that] particular case."  John Chipman Gray, *The Nature and Sources of the Law* 261 (2d ed. 1921); *see also Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 67 (1996) (noting that what is binding are "those portions of the opinion necessary to th[e] result"); [Bryan Garner *et al.*, *The Law of Judicial Precedent* 44–47 (2016)] . . . .  The *ratio decidendi* stands in opposition to mere *obiter dicta*—propositions stated in passing that were not actually necessary to the earlier court's decision.

*Agudas Chasidei Chabad of United States v. Russian Fed'n*, 2020 WL 13611456, at *15 (D.D.C. Nov. 6, 2020); *see also Ramos v. Louisiana*, 590 U.S. 83, 104 (2020) ("It is usually a judicial decision's reasoning—its *ratio decidendi*—that allows it to have life and effect in the disposition of future cases."); *In re Burns*, 974 F.2d 1064, 1068 (9th Cir. 1992) ("The ratio decidendi is the principle which explains why certain facts in a certain procedural context compel a certain conclusion, which is not necessarily the same as the literal meaning of the words used to articulate the principle in the particular case.").

> a considerable time after the earlier decision—not within the short rehearing period to which we have referred. The subsequent developments in those cases were in effect new proceedings in which the claimant attempted to reopen a closed decision which had become final.

169 Ct. Cl. 305, 309–10 (1965) (emphasis added). That is the limited holding — and proper reading — of *Brownfield*, which is perfectly in line with *Eicks*. *See Eicks*, 145 Ct. Cl. at 526–27 (the "cause of action" that the court recognized "arose on the refusal of the Board, after the Secretary's disapproval, to correct plaintiff's record"). In *Eicks*, there was only one corrections board decision and one overruling of that decision by a service secretary.

Here, as in *Eicks* — and in contrast to the procedural posture of *Brownfield* — Mr. Wheless asks this Court to review the DASA's first rejection of the first favorable board decision, *not* a second corrections board decision on the same claim.

The facts in *Holbrook* — the other case the government cited, Def. Rep. at 4 — also do not remotely align with Mr. Wheless's case. In *Holbrook*, the plaintiff incorrectly argued that the statute of limitations clock started from the date of an *adverse* board decision; the case did not involve a service secretary's rejection of a *favorable* board decision. *Holbrook*, 229 Ct. Cl. at 606 (noting plaintiff's argument "that the statute of limitations began to run again on the date of the [corrections board's] decision"). The plaintiff in *Holbrook* relied upon the "decision in *Eicks* . . . for the proposition that a new cause of action arises from the arbitrary and capricious *failure* of a *correction board* to correct a serviceman's date of discharge." 229 Ct. Cl. at 606 (emphasis added). Of course, the Court of Claims made perfectly clear in *Eicks* that "*the controlling issue*" in that case was "whether the Secretary's action in disapproving [the board's decision] was arbitrary and capricious. If it was, the record should have been corrected." *Eicks*, 145 Ct. Cl. at 526 (emphasis added). *Eicks* was wholly inapposite to the factual situation at issue in *Holbrook* because the latter did not involve a service secretary's rejection of a favorable board decision. The facts and procedural posture of Mr. Wheless's case align almost perfectly with *Eicks*, but not at all with *Holbrook*.[11]

---

[11] This Court readily acknowledges that the Court of Claims in *Holbrook* wrote that "*Eicks* stands for the much narrower proposition that a board cannot arbitrarily and capriciously refuse to implement a prior favorable decision relating to discharge without creating a new cause of action from the date of that refusal." *Holbrook*, 229 Ct. Cl. at 606. That characterization of *Eicks* is plainly incorrect, however. First, the corrections board in *Eicks* did *not* "arbitrarily and capriciously

A more recent Claims Court decision also supports this Court's reading of *Eicks* and its progeny, as well as the continued vitality of those cases. *See Jones v. United States*, 7 Cl. Ct. 673, 678 (1985) (following *Eicks* and concluding that "plaintiff's right to recover retirement pay depends on whether the Secretary's refusal to adopt the Board's recommendation was proper").

Finally, based on the Federal Circuit's *en banc* decision in *Martinez v. United States*, 333 F.3d 1295 (Fed. Cir. 2003), this Court rejects the government's novel view of *Eicks*. In fact, the government's reading of *Eicks* here is fundamentally inconsistent with the government's earlier treatment of that case in *Martinez*. This Court concludes the government had it right the first time. In *Martinez*, the government expressly asked our appellate court to overrule certain "prior inconsistent decisions of the Court of Claims," including *Eicks*. Brief for Defendant-Appellee, *Martinez v. United States*, 333 F.3d 1295 (Fed. Cir. 2003) (No. 99-5163), 2002 WL 32397176, at *40–47. The government argued that "the question of whether 10 U.S.C. § 1552 provides an independent basis for the Court of Federal Claims to entertain a military personnel claim has not received consistent answers." *Id.* at *40. In particular, the government posited a contradiction between two prior decisions: *Dehne v. United States*, 970 F.2d 890, 892 (Fed. Cir. 1992), and *Blum v. United States*, 227 Ct. Cl. 555, 559 & n.3 (1981). *Id.* at *40–42. According to the government, *Dehne* correctly decided that 10 U.S.C. § 1552 is not a money-mandating provision of law actionable under the Tucker Act, while "the decision in *Blum* was in error" because it concluded § 1552 could be money-mandating. *Id.* at *42.

Significantly for our purposes, the government argued, as a corollary, that the *Blum* line of authority should also be overruled because it erroneously "authorizes what in effect amounts to an exception to the statute of limitations." *Id.* at *42. The government thus asked the Federal Circuit to overrule *Eicks* and *Hertzog* as erroneously decided. *Id.* at *43–44. The paradigmatic example of the statute of limitations problem, the

refuse to implement a prior favorable decision" of any kind. To the contrary, the record corrections board concluded that a record correction in favor of the plaintiff servicemember was warranted. Second, there simply was no "prior favorable decision" regarding the leave for which the plaintiff sought credit in *Eicks* other than the corrections board decision itself. Third, and more importantly, the court in *Eicks* expressly wrote that "the controlling issue" was the service secretary's disapproval of the favorable corrections board decision — that is what gave rise to the timely cause of action in the Court of Claims. In light of the facts and procedural context at issue in *Holbrook*, its characterization of *Eicks* does not represent a *ratio decidendi* but rather constitutes nonbinding dicta.

government maintained, is *Eicks*, the holding of which the government described as follows:

> Although the board recommended that the Secretary grant relief, the Secretary denied relief. In a decision by retired Justice Reed, the Court held that **the Secretary's refusal to accept the board's recommendation created a new cause of action** because the officer's records had not been corrected.

*Id.* at \*42–43 (emphasis added). The government's reading of *Eicks* in *Martinez* is precisely how this Court reads *Eicks* here. Just like the government in *Martinez*, this Court reads Justice Reed's opinion in *Eicks* as holding that "the Secretary's refusal to accept the board's recommendation created a new cause of action because the officer's records had not been corrected." *Id.* \*42–43. And, just like the government in *Martinez*, this Court agrees that *Eicks* has implications for when the statute of limitations begins to run. This Court rejects the government's attempt to run away from its position on *Eicks* in *Martinez.*

More importantly, did the Federal Circuit bite on the government's invitation to overrule all of those cases the government didn't like? Nope. Indeed, the Federal Circuit — again, sitting *en banc* — rejected the government's hypothesis at its very roots, declining to overrule either *Blum* or the supposedly problematic *Eicks* or *Hertzog* decisions. We quote the Federal Circuit on this point in its entirety:

> We disagree with the government's suggestion that our cases are in conflict as to whether the correction board statute, 10 U.S.C. § 1552, is a "money-mandating" statute as that term is used in Tucker Act cases. The government cites a statement in *Dehne v. United States*, 970 F.2d 890, 894 (Fed. Cir. 1992) (section 1552 "does not mandate pay at all"), which it contends is inconsistent with decisions such as *Blum v. United States*, 227 Ct. Cl. 555, 559 n. 3 (1981) (section 1552 "is a statute expressly mandating compensation, and we can enforce it if the plaintiff should have been retired for disability but the Correction Board illegally failed to so find").
>
> We discern no conflict. The point made by the court in *Dehne* was simply that section 1552 is not the source of the right to back pay, which must come from some other statute, and that absent an underlying "pay-mandating statute on which to

16

base his Tucker Act claim," the correction board statute did not provide a basis for the plaintiff to obtain relief from the Court of Federal Claims. *Dehne*, 970 F.2d at 894.

> *A different analysis applies when the correction board has granted relief and the service member seeks to enforce or challenge the implementation or scope of the remedial order*, since in those cases the question whether the original discharge was lawful is no longer in issue and *accrual* therefore does *not* occur at the time of the allegedly improper discharge.

*Martinez*, 333 F.3d at 1315 n.4 (emphasis added) (some citations omitted).

What emerges from *Martinez* is that the correction board statute, 10 U.S.C. § 1552, *can* be a money-mandating statute both for the purposes of this Court's jurisdiction and claim accrual — so long as the claim is tied to an underlying pay-mandating statute.[12] Given the Federal Circuit's endorsement of *Blum* and its refusal to overrule either *Eicks* or *Hertzog* — notwithstanding the government's invitation to do so — this Court concludes that *Eicks* remains binding precedent and squarely controls the outcome here. This Court has jurisdiction to review Mr. Wheless's timely claim that he is entitled to monetary relief because of the Army's (alleged) failure to properly implement the ABCMR's decision in his favor.[13]

The government's motion to dismiss for lack of jurisdiction due to the statute of limitations is **DENIED**.

---

[12] *See, e.g., Anderson v. United States*, 59 Fed. Cl. 451, 457 n. 10 (2004) (discussing *Martinez*, 333 F.3d at 1315 n.4, and the "triggering date" for statute of limitations "as *Martinez* commands"); *Driscoll v. United States*, 67 Fed. Cl. 22, 25 (2005) (noting that "the Federal Circuit confirmed that § 1552 is a money-mandating statute in *Martinez*" (citing 333 F.3d at 1315 n. 4)); *Stein v. United States*, 121 Fed. Cl. 248, 274 (2015) ("[T]he Federal Circuit identified two exceptions to the rule that 10 U.S.C. § 1552 is not money-mandating[.]" (discussing *Martinez*, 333 F.3d at 1314 n.4)); *cf. McCord v. United States*, 943 F.3d 1354, 1359 (Fed. Cir. 2019) ("Although § 1552 itself is not a 'money-mandating' statute, it becomes 'money-mandating' if a claimant was improperly denied benefits but became entitled to them under other provisions of law.").

[13] The government partially conceded this point at oral argument. *See* Tr. 11:19 – 12:6 (government counsel's agreeing that a service secretary's or DASA's rejection of a board decision is reviewable by this Court). A concession by a party's counsel may bind the party. *See Def. Integrated Sols., LLC v. United States*, 165 Fed. Cl. 352, 379 n.47 (2023) (collecting cases).

### B.  Mr. Wheless's Claim Is Justiciable

"Justiciability is distinct from jurisdiction; it depends on 'whether the duty asserted can be judicially identified and its breach judicially determined, and whether protection for the right asserted can be judicially molded.'"  *Murphy v. United States*, 993 F.2d 871, 872 (Fed. Cir. 1993) (quoting *Baker v. Carr*, 369 U.S. 186, 198 (1962)).  Justiciability is of particular concern "when one seeks review of military activities."  *Id.*  Thus, the Federal Circuit has recognized that there are "thousands of [ ] routine personnel decisions regularly made by the services which are variously held nonjusticiable or beyond the competence or the jurisdiction of courts to wrestle with."  *Voge v. United States*, 844 F.2d 776, 780 (Fed. Cir. 1988).  On the other hand, even "[w]hen the military is given unlimited discretion by Congress, it is nevertheless bound to follow its own procedural regulations if it chooses to implement some."  *Murphy*, 993 F.2d at 873.

Here, the government argues that Mr. Wheless's claim "is non-justiciable because . . . in his submissions *to the board*, [Mr. Wheless] expressly invoked the discretionary authority to grant equitable relief when a specific personnel action was lawful but unjust."  Def. MTD at 9 (emphasis added) (citing 10 U.S.C. § 1552(a)).  The government's argument is little more than a page.  Brevity is encouraged where the law and the facts clearly support the argument; as framed, however, the government's argument is, at best, a mere sketch of a hypothesis requiring further research and, at worst, lacks any factual underpinnings.  The Court cautions parties against throwing half-baked arguments against the wall to see if the Court will do the work to make them stick.  *See* RCFC 11.[14]

---

[14] The main reason the Court does not contemplate sanctions — and a show cause order pursuant to RCFC 11 — is that Mr. Wheless's complaint itself cracked open the door to the government's argument in appearing to sporadically admit that he does not have a right to COAD.  *See* Def. Rep. at 6 (emphasis added) (citing Compl. ¶ 37 and ECF No. 1-2 at 20, 65).  The Court suspects that the (possibly) problematic complaint language is an attempt by Mr. Wheless's counsel to buttress his position, based on *Eicks*, that there is no statute of limitations defect.  What impact, if any, the complaint's statements about COAD may have on the merits of this case remains to be seen.  And had the government taken the time to explain why the complaint's various legal conclusions about COAD somehow constitute admissions that are fatal to Mr. Wheless's claim or make it nonjusticiable — specifically in the context of the Army's COAD regulation included with the complaint, *see* ECF No. 1-2 at 65–67 — well, who knows, perhaps there is some kernel of a viable argument lurking there.  The government, however, did not even bother to address the

First, the government's argument contains a glaring contradiction.  On the one hand, the government asserts — *absent any citation to any authority whatsoever* — that "[t]he Army's ultimate decision not to grant [Mr. Wheless] relief in the interest of justice is not reviewable by this Court because the Court lacks the equivalent authority to correct injustices absent a legal right to the record correction."  Def. MTD at 10.  But not four sentences earlier, on the very same page of its motion, the government acknowledged that there *are* at least *some* cases in which the court *may* "correct injustices in the same manner the board can."  *Id.* (citing *Sanders v. United States*, 219 Ct. Cl. 285, 594 F.2d 804 (1979) (en banc), among other cases).  The government makes no attempt to reconcile those two assertions.  The Court addresses *Sanders* in more detail *infra*.

Second, while the government claims that Mr. Wheless's complaint before the ABCMR suffered from two "defects," Def. MTD at 10, the government fails to show how or why the nature of his claim *before the board* results in Mr. Wheless's claim being non-justiciable *in this Court*.  In fact, there are multiple cases (discussed *infra*) that illustrate this Court's jurisdiction over claims of injustice that accompany a monetary claim.  The government either failed to identify or did not adequately address these cases in its briefs.

### 1.  The ABCMR did not base its decision here on a discretionary finding of injustice

The flaw in the government's argument is illustrated by a basic review of the contours of 10 U.S.C. § 1552 — the statutory source for military record correction boards, their powers, and their responsibilities — as well as the particulars of Mr. Wheless's claims before the ABCMR.

Section 1552 of Title 10 of the United States Code provides that "[t]he Secretary of a military department may correct any military record of the Secretary's department when the Secretary considers it necessary to [1] correct an error or [2] remove an injustice."  10 U.S.C. § 1552(a)(1).  In general, "such corrections shall be made by the Secretary acting through boards of civilians of the executive part of that military department."  There is a baseline time limitation for claims brought to such a board: "a request for the correction" must be made "within three years after discovering the [1] error or [2] injustice."  *Id.* § 1552(b).  In both cases — *i.e.*, whether the claim concerns an "error" or "injustice" — "[a] board established under subsection (a)(1) may excuse a

---

COAD regulation.  Considering the gravamen of the complaint, Mr. Wheless's claim — based on the DASA's rejection of the ABCMR's decision — is justiciable, as explained *infra*.

failure to file within three years after discovery if it finds it to be in the interest of justice." *Id.* Thus, the consideration of "justice" may apply in two distinct ways: (1) as the substantive basis for a claim to a corrections board seeking a record correction; and (2) as the basis for a board to excuse an otherwise late claim (*i.e.*, one that is past the three-year limitation).

In this case, Mr. Wheless asserted to the ABCMR that a correction was "necessary to correct an error." 10 U.S.C. § 1552(a)(1). For example, on the form "Application for Correction of Military Record Under the Provisions of Title 10, U.S. Code, Section 1552" (DD Form 149), Mr. Wheless alleged that "*the record is in error* because applicant[']s request for [COAD] was returned without action (the equivalent of a disapproval) for erroneous and provably false reasons." ECF No. 1-2 at 14 (emphasis added). There are also references to the "interest of Justice" in his application for record correction, *e.g.*, ECF No. 1-2 at 21, but that phrase would appear to relate to the fact that his application was admittedly late (but not necessarily to the substantive grounds for correction). Indeed, on that same page in his application, Mr. Wheless asserts as follows:

> Although *it can be argued* that there is no right to COAD, I certainly did have a right to due process and that due process is defined by AR 635-40. Because my conditions did, in fact meet the eligibility criteria outlines in AR 635-40, paragraph 6-7a(2), and I met all other criteria for COAD, my application for COAD should have been considered and would likely have been approved.

*Id.* (emphasis added).

This most certainly does not constitute a binding concession that he lacks a right to COAD but rather appears to be an attempt to anticipate the Board's possible view *arguendo.* Indeed, Mr. Wheless went on to assert that the Board should act on his current correction request — in lieu of seeking an "advisory opinion" from the "applicable office" — because such a *post hoc* advisory opinion "would merely compound the previous *error* and injustice." *Id.* (emphasis added). This Court concludes that Mr. Wheless did more than ask the ABCMR to correct a "mere" injustice, but rather asserted that the Army made a factual and legal error. ECF No. 1-2 at 3 (ABCMR noting that Mr. Wheless alleged that his request for COAD "was denied based on erroneous and false reasons").

This Court is not alone in its assessment, as the ABCMR itself makes clear. The ABCMR "determined it is in the interest of justice to excuse the applicant's failure to

timely file." ECF No. 1-2 at 3. But that reference to "justice" relates to the timeliness of Mr. Wheless's claim to the Board. As to the substance of Mr. Wheless's record correction claim, the ABCMR well understood that he had alleged error. *Id.* (noting Mr. Wheless's allegations that his "medical retirement was improper because he was eligible for and applied for [COAD], but it was denied based on erroneous and false reasons" and that "his MEB (DA Form 3947) contains an error").

More importantly, *nowhere* does the ABCMR indicate that its decision was "necessary to . . . remove an injustice." ECF No. 1-2 at 10. To the contrary, "the Board determined there is sufficient evidence to grant relief" based the "applicant's contentions, his military record, counsel's petition, *and regulatory guidance*[.]" *Id.* (emphasis added). In particular, "[t]he Board agreed the applicant submitted a COAD application on 14 May 2014 and on that date *he met the eligibility criteria*[,] thereby warranting correction in this case." *Id.* (emphasis added). The government does not mention — let alone address — any of these facts that it agrees are incorporated by reference into Mr. Wheless's complaint. Def. MTD at 2 n.1. The Court rejects the government's assertion that Mr. Wheless "before the board did not assert any legal right to correction of his military records and only requested correction of an injustice." Def. Rep. at 5.

## 2. The government ignores *Eicks* and its progeny and fails to show why this Court lacks standards by which to evaluate Mr. Wheless's central claim

The government further asserts that Mr. Wheless's "claims *before the board* suffered from two legal defects." Def. MTD at 10 (emphasis added). The first, according to the government, is that "he had not filed his claim within three years of discovering the error or injustice[.]" *Id.* The second alleged defect is that Mr. Wheless "acknowledged that he *may* not be able to claim any right to COAD." *Id.* With regard to the first, the ABCMR has the discretion to waive — and did waive — the three-year limitation period. ECF No. 1-2 at 3. And with regard to the second, Mr. Wheless's attempt to address a possible argument about COAD entitlement does not constitute an admission that the Army made no factual or legal error in effectively denying his original COAD application. In any event, the government makes no effort to explain how those two putative "defects" *before the Board* impact the justiciability of the complaint *before this Court*, a notable failure considering *Eicks* and its progeny.

The government cites to "[t]he Army's ultimate decision not to grant [Mr. Wheless] relief *in the interest of justice*," Def. MTD at 10 (emphasis added), but in doing so, the government mischaracterizes the record. At least at this stage of the case,

the facts do not reflect that the Army made any decision at all about the "interest of justice"; instead, the record indicates only that "the [DASA] found there is *insufficient evidence* to grant relief." ECF No. 1-2 at 1 (emphasis added).[15] Moreover, in responding to a congressional inquiry about Mr. Wheless's case before the ABCMR, the Army claimed that "the Acting [DASA] found by a preponderance of evidence that the denial of SSG (Ret) Wheless'[s] COAD request was not *in error* or unjust." ECF No. 1-2 at 64 (emphasis added). This report regarding the Acting DASA's decision explicitly references "error." *Id.*[16] The government's assertion that that the Army acted only on a claim of "injustice," Def. Rep. at 5, is completely unsupported.

The government's additional argument[17] that the Court of Claims decision in *Sanders* somehow precludes the justiciability of Mr. Wheless's claim is also just plain wrong. If anything, *Sanders* flatly refutes the government's position here:

> Whether the claim is based on legal error or material factual error, ***or injustice amounting to such error, is thus immaterial in regard to our power to review***. It may be relevant, however, to the nature of proof necessary for plaintiff to recover . . . . Since amendment of 28 U.S.C. [§] 1491 by Pub. L. No. 92-415 in 1972, the relief afforded may also include reinstatement and correction of records. *To recover for failure to correct an alleged injustice*, such as perhaps based on gross material error of fact or an action contrary to all evidence, *it must be proved that such failure was arbitrary and capricious*, or in bad faith, or contrary to law, or without rational basis, seriously prejudicial to plaintiff, *and with monetary consequences*. In such event, the abuse of administrative discretion rises to the level of legal error which merits judicial relief.

---

[15] This finding is itself contrary to the ABCMR's determination, which "unanimously recommended full relief" based on the evidence. ECF No. 1-2 at 1.

[16] This Court notes that the putative finding of the Acting DASA is not itself in the record — at least as it stands now.

[17] *See* Def. MTD at 10; Def. Rep. at 5–6.

*Sanders v. United States*, 594 F.2d at 813 (emphasis added) (footnote omitted);[18] *see also id.* at 812–813 (citing *Hertzog*, 167 Ct. Cl. 377, and *Eicks*, 145 Ct. Cl. 522, with approval).

*Sanders*, in turn, refers to *Reale v. United States*, 208 Ct. Cl. 1010, 1011–12, 529 F.2d 533 (table), *cert. denied*, 429 U.S. 854, 97 (1976), for a discussion of "the distinction between error and injustice." *Sanders*, 594 F.2d at 814 n.12. There, in *Reale*, the Court of Claims also made clear that there is no *per se* bar on the Court's consideration of a claim based on injustice:

> The Board is to recommend action to correct "error" or "injustice," 10 U.S.C. § 1552. The two things are not the same. "Error" means legal or factual error. Normally, it is such that a court of law could correct it whether the soldier or sailor had first applied to a Correction Board, or not. If the Board when asked, fails to correct such an "error", courts will correct it on judicial review. "Injustice," when not also "error," is treatment by the military authorities, that shocks the sense of justice, but is not technically illegal. *Yee* v. *United States,* 206 Ct. Cl. 388, 512 F. 2d 1383 (1975). Soldiers and sailors cannot apply directly to courts for correction of "injustice" that is not "error." When they apply to Boards established under 10 U.S.C. § 1552, for correction of such "injustice," these Boards exercise high discretionary functions in the management of the military establishment. Courts are not authorized to

---

[18] At oral argument, this Court asked counsel of record for the government how the its assertion that "[t]he Army's ultimate decision not to grant [Mr. Wheless] relief in the interest of justice is not reviewable by this Court because the Court lacks the equivalent authority to correct injustices absent a legal right to the record correction," Def. MTD at 10, might be reconciled with the quoted language from *Sanders*. In response, counsel for the government conceded there is *no* such blanket justiciability rule precluding this Court's review of board decisions involving a finding of injustice. Tr. 5:11-14 (conceding that "what *Sanders* is saying . . . is that [the courts] do have power in some limited circumstances to review claim of injustice"). The Court is disappointed by the government's painting of a *per se* rule that simply does not exist, coupled with the government's failure to even reference, let alone grapple with, the language in *Sanders* adverse to the government's position. *See United States v. Shaffer Equip. Co.*, 11 F.3d 450, 458 (4th Cir. 1993) ("The general duty of candor and truth thus takes its shape from the larger object of preserving the integrity of the judicial system.").

> intervene *except in manifest cases of abuse of discretion*, and
> perhaps not always effectively even then, because they may
> not have jurisdiction to fashion a satisfactory mode of relief in
> all cases.

*Reale*, 208 Ct. Cl. at 1011–12 (cleaned up) (emphasis added).

*Reale* makes clear that an "injustice" may constitute justiciable error, and *Sanders* makes clear that such a claim of "injustice amounting to . . . error" is justiciable so long as there are "monetary consequences."  *Sanders*, 594 F.2d at 813.  A later Court of Claims decision reads *Sanders* to conclude precisely that:

> The *Sanders* court did not entirely rule out the possibility that
> somewhere down the road in the future there might be such
> an error or injustice so shocking to the conscience and ignored
> by a correction board that evidence could show it rose to the
> level of legal error necessary for the court to remedy it. . . .
> One thing is clear, the court cannot itself correct a simple
> injustice or direct a correction board to do so, *without the*
> *correction implementing a money judgment*.  Correction boards
> have the authority by statute to remove or correct an error or
> injustice.   10 U.S.C. [§] 1552(a) (1976).   The statute says:
> "Except when procured by fraud, a correction under this
> section is final and conclusive on all officers of the United
> States."  An example of the correction of an injustice may be
> illustrated, for instance, where the board orders a promotion
> or changes the character of a soldier's discharge from
> dishonorable to honorable as a matter of clemency to correct
> a factual but not necessarily a legal error.  The court cannot
> do this because it does not involve a monetary claim, but is
> equitable in nature.

*Grieg v. United States*, 640 F.2d 1261, 1266 (Ct. Cl. 1981) (emphasis added) (internal citation omitted).[19]  The government expressly agreed that "[h]ere[,] there would be [a] money

---

[19] The government cites *Grieg* in its motion, but does not provide, let alone discuss, any of the case's text.  Def. MTD at 10.

[judgment] attached to the correction" of military records.  Tr. 17:7-13 (in response to the Court's question, quoting *Grieg*).

In sum, this Court reads *Sanders* and *Grieg* together to mean that a claim based on injustice is not properly before this Court where there are no monetary implications, but otherwise there is no *per se* jurisdictional or justiciability bar.  Indeed, in *Murphy*, the Federal Circuit concluded that a claim of injustice *is* justiciable so long as there is an attendant money claim:

> Section 1552(a) describes the Correction Boards' jurisdiction to act on behalf of the Secretary to "remove an injustice."  It says absolutely nothing about the Claims Court's jurisdiction which is circumscribed solely by the Tucker Act, 28 U.S.C. § 1491, and which demands that the government be called upon to answer in money.  *Absent that*, there is no review in the Claims Court of alleged "injustice."

*Murphy*, 993 F.2d at 874 (emphasis added); *see also Dodson v. United States*, 988 F.2d 1199, 1204 n.6 (Fed. Cir. 1993) ("The boards may also be reviewed [by the Court] *for failure to correct an alleged injustice* where factual, rather than legal, error has been committed by the military[.]" (emphasis added)).[20]

Of course, there are categories of military pay claims that are nonjusticiable.  *See, e.g., Fluellen v. United States*, 225 F.3d 1298, 1304 (Fed. Cir. 2000) ("A claim of error in a promotion decision presents a nonjusticiable controversy because there are no statutory or regulatory standards against which a court can review such a decision; it relates to a matter left to the discretion of the military.").  But this is not a case in which there are no "regulatory standards" for the Court to consider.  *Id.*[21]  Indeed, the ABCMR apparently

---

[20] The government essentially acquiesces to this view in its reply brief.  *See* Def. Rep. at 5-6 (selectively quoting from *Sanders* but conspicuously omitting that decision's references to the "arbitrary and capricious" standard of review).

[21] In *Lindsay v. United States*, for example, the Federal Circuit explained:

> The fundamental question of justiciability we confront here is whether "tests and standards" exist against which a court can measure the challenged action.  *Voge v. United States,* 844 F.2d 776, 780 (Fed. Cir. 1988).  Because "decisions as to the composition, training, equipping, and control of a military force are essentially

relied upon such standards in rendering its decision in favor of Mr. Wheless.  ECF No. 1-2 at 10.  In any event, the government does not even attempt to make an argument about the lack of regulatory standards nor does the Army argue that its COAD regulation is not money-mandating.  *See* Tr. 54:15-25.  Nor, for that matter, does the government argue that this Court's consideration of Mr. Wheless's claim would "intrude upon any discretion reserved exclusively for the military" — another justiciability consideration.  *Roth v. United States*, 378 F.3d 1371, 1385 (Fed. Cir. 2004).

Finally, the Court strongly agrees with Mr. Wheless — again, at least at this stage of his case — that "[i]t is rare that two cases are so factually well aligned as is this case with *Eicks*," Pl. Resp. at 6–7 & n.1, which the Court urges counsel for the government to study with his supervisors.  At a minimum, if the government were going to argue that Mr. Wheless's claim is not justiciable, the government would have to distinguish *Eicks*.  The government, however, does not address *Eicks* at all in its justiciability argument.

* * * *

The Court concludes its resolution of this issue with this Federal Circuit guidance:

> "[W]hen a correction board fails to correct an injustice clearly presented in the record before it, it is acting in violation of its mandate."  Our predecessor court elaborated upon this obligation of the Board: "[T]he *Secretary and his boards* have an abiding moral sanction to determine, insofar as possible, the true nature of an alleged injustice and to take steps to grant thorough and fitting relief."

*Roth v. United States*, 378 F.3d 1371, 1381 (Fed. Cir. 2004) (emphasis added) (first quoting *Yee v. United States*, 512 F.2d at 1387 (Ct. Cl. 1975); and then quoting *Caddington v. United States,* 147 Ct. Cl. 629, 178 F. Supp. 604, 607 (1959)); *see also Haselwander v. McHugh*, 774

---

professional military judgments," *Gilligan v. Morgan,* 413 U.S. 1, 10, 93 S. Ct. 2440, 37 L.Ed.2d 407 (1973), the substance of such decisions, like many other judgments committed to the discretion of government officials, is frequently beyond the institutional competence of courts to review.

295 F.3d 1252, 1257 (Fed. Cir. 2002).  Indeed, in *Lindsay* the Federal Circuit explained that "had the AFBCMR concluded that removal of the challenged OERs would not have affected [plaintiff]'s passovers, its determination would not be reviewable; its determination that the challenged OERs were free of error *or injustice is reviewable*."  *Id.* at 1259 (emphasis added).

F.3d 990, 996 (D.C. Cir. 2014) (quoting and applying these principles from *Yee* and *Caddington*); *Thomas v. Cheney*, 925 F.2d 1407, 1424 (Fed. Cir. 1991) ("The board's duty is to correct injustice, and the reviewing court must assure itself that the action taken is correct, and supported by substantial evidence."). The Court expects the government to take the Federal Circuit's admonition regarding injustice at least as seriously as justiciability concepts.

The government's motion to dismiss on justiciability grounds is **DENIED**.

## IV.   OTHER UNANSWERED QUESTIONS AND MOVING FORWARD

At oral argument, the government asserted for the first time that "[t]here was no favorable Board decision" here, not "[b]ecause it was rejected by the [DASA]," but "[b]ecause the Board has no power to make decisions." Tr. 20:2-7. The Court then asked the government, if it were correct, what "[t]hen . . . would we be reviewing?" Tr. 20:8-9. The government responded not with an explanatory rationale or specific regulatory text but with a reference to the Federal Circuit's decision in *Strickland v. United States*, 423 F.3d 1335 (Fed. Cir. 2005). Tr. 20:11-13 ("That's *Strickland*. That's the Federal Circuit. That's binding on this Court . . . ."). The government's point was not entirely clear, was certainly not developed in the briefs, and should be waived, but the Court elects to address the argument anyhow. In that regard, the government's basic point seems to be that this Court cannot isolate the Board's decision from that of the DASA (or the Secretary). Because there is just one agency decision, according to the government, there is no cause of action based on the DASA's decision to reject the "Board's decision" — the latter "decision" just does not independently exist. Given that there is one decision — that of the DASA (or the Secretary) — the "Board" gave Mr. Wheless nothing in the government's view and so the DASA's decision did not take anything away from him; thus a new statute of limitations clock did not start.

The government stretches *Strickland* beyond its facts, the central issue in that case, and, thus, its *ratio decidendi*. More significantly still, the government makes no effort to reconcile its apparent view of *Strickland* with the various binding appellate precedents, including *Eicks*, that this Court addresses above. In *Strickland*, the Federal Circuit framed the issue before it simply as "whether the Assistant Secretary [of the Navy] acted outside his statutorily-granted powers when he rejected the recommendation of the Board." 423 F.3d at 1337. For starters, and without reading further, a reader would be well-justified in guessing that no matter how a corrections board's action is characterized — whether

as a decision, finding, or recommendation — a secretary's decision rejecting a board's conclusion is reviewable. We need not guess, however, as the Federal Circuit held, at least based on the Navy regulations at issue, that "[i]f . . . the Secretary disagrees with the Board and rejects its recommendation, then the Secretary must provide a written statement supporting his rejection" and that the "court reviews the decision on the basis of the Secretary's written statement." *Id.* at 1339.

In other words — and putting aside for the moment the Navy regulation(s) at issue in *Strickland* — the Federal Circuit expressly recognized that the Secretary's decision is reviewable in light of the record and, presumably, the board's recommendation or decision. *See id.* at 1340 (noting that each service has a regulation that "provide authority for the Secretary to override Board *decisions*" (emphasis added) (citing Army Regulation, 32 C.F.R. § 581.3(g)); *see also id.* at 1341 (noting that "[o]ther circuits too have held that the Secretary is authorized to reject a Board recommendation *so long as he acts on the basis of either explicitly stated policy reasons or evidence in the record*" (emphasis added)).[22]

A subsequent Federal Circuit decision, *Strand v. United States* — a case the government never even mentioned — conclusively demonstrates this Court's reading of *Strickland* is correct. *See Strand v. United States*, 951 F.3d 1347, 1351 (Fed. Cir. 2020). In *Strand*, the Federal Circuit framed the issue before it this way: "Here we are called to review not the action of a correction board, but action by the Secretary of the Navy to *overrule* that correction board." *Id.* (emphasis added). This formulation, of course, is perfectly consistent with, and supported by, the framing of the issue in *Eicks*. In addition, the Federal Circuit expressly confirmed that a service secretary's rejection of a board decision or recommendation is reviewable. *Id.* at 1354 (holding that "[a] service secretary may reject the recommendation of a records correction board — even a recommendation supported by the administrative record — so long as the secretary's rejection decision is not arbitrary or capricious, unsupported by substantial evidence, or otherwise contrary to the law" (citing *Strickland*, 423 F.3d at 1343)). In other words, a "secretary's rejection decision" is reviewable by this Court even *assuming* the ABCMR's findings are only recommendations, an assumption that may not even be warranted in this case.[23]

---

[22] The Court notes that *Strickland*, 423 F.3d at 134, relied at least in part on *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984), but the Supreme Court has since overruled the latter in *Loper Bright Enters. v. Raimondo*, 144 S. Ct. 2244 (2024).

[23] The Court acknowledges that, in *Strickland*, the Federal Circuit wrote that "the Secretary's decision is the one and only final agency action," 423 F.3d at 1339, but *Strickland* does not purport to — and, indeed, cannot — overrule either *Martinez* or *Eicks* (and its progeny), assuming for the

That brings us to the applicable Army regulation and the Secretary of the Army's decision here (assuming there is one beyond the cover letter transmitting the Board's decision and the DASA's reported rejection of it, ECF No. 1-2 at 1). The critical and perhaps fatal problem for the government is that, in response to the Court's question at oral argument, the government could not provide any support for the authority of either the actual or acting DASA[24] to reject the ABCMR's decision in favor of Mr. Wheless. Tr. 9:17–10:9. In other words, perhaps only the Secretary — and not the DASA — could reject the ABCMR's decision. Although the government could not cite a specific, formal delegation of authority or a regulation providing the DASA with any power in ABCMR cases, the government referenced the Federal Circuit's decision in *Strickland*, asserting that it "also is dealing with the Deputy Assistant Secretary in that case." *Id.*

But *Strickland* most certainly does *not* answer this Court's question. *Strickland* concerned the Board for Corrections of Naval Records, not the Army's Board. *See* 423 F.3d at 1336. The Navy, at least back then, had a regulatory delegation of authority from the Secretary of the Navy to an assistant secretary. *Id.* at 1336 n.2 (citing 32 C.F.R. § 700.324 (2004)). This Court was unable to locate the Army analogue of that delegation; it is certainly possible that the Court missed it, but, again, the government has provided no such citation.

_____

sake of argument that there is any tension between those earlier cases and the quoted language in *Strickland*. Once again, considering only the issue before our appellate court in *Strickland* — and its *ratio decidendi* — what *is* clear is that the Federal Circuit did *not* address any statute of limitations issue. 423 F.3d at 1337. Instead, "[t]he sole issue on appeal" in *Strickland* was "whether the Assistant Secretary acted outside his statutorily-granted powers when he rejected the recommendation of the Board." *Id.* (Even that is not a precise formulation because the *statute* by its terms does not give assistant secretaries any power to do anything.) The Federal Circuit answered that question in the negative, ultimately concluding merely that "the trial court erred in interpreting § 1552(a) to mandate that the [Secretary] cannot reject a Board recommendation." Neither Mr. Wheless nor this Court takes any issue with that proposition. Moreover, *Strickland* did not explain how concepts of a final agency action under the Administrative Procedure Act ("APA"), 60 Stat. 237 (1946) (codified in scattered sections of 5 U.S.C.), apply to money-mandating Tucker Act claims. The APA does not by its terms apply to money-mandating claims in this Court. *See Keltner*, 165 Fed. Cl. at 500–01. Indeed, this Court has no jurisdiction over APA claims. *See, e.g., Murphy*, 993 F.2d at 874 ("[T]he Claims Court has no authority to invoke the APA.").

[24] The record contains contradictory indications of precisely who made the decision to reject the Board's decision.

If anything, the Court has strong reason to believe that the applicable Army regulation may be *very* different from the Navy regulation(s) addressed almost twenty years ago in *Strickland*.   In that regard, the current Army regulation governing the ABCMR provides that "[t]he panel members' majority vote constitutes the action of the ABCMR."   32 C.F.R. § 581.3(g)(1) ("ABCMR decisions").   More significantly, the regulation provides, regarding "ABCMR final action" that:

> Except as otherwise provided, **the ABCMR acts for the Secretary of the Army**, and an ABCMR **decision** is **final** when it—
>
> (A) Denies any application (except for actions based on reprisals investigated under 10 U.S.C. 1034).
>
> (B) *Grants any application in whole or in part without a hearing* when— (1) The relief is as recommended by the proper staff agency in an advisory opinion; and (2) Is *unanimously* agreed to by the ABCMR panel; and (3) Does not involve an appointment or promotion requiring confirmation by the Senate.

32 C.F.R. § 581.3(g)(2)(i) (emphasis added).   Thus, the Army regulation contemplates that the ABCMR's "decision" may itself constitute "final [agency] action" on behalf of the Secretary.   *Id.*   Here, the ABCMR voted unanimously to grant Mr. Wheless's application for correction of his records (which did not involve an appointment or promotion).

In contrast, "[t]he ABCMR will forward the decisional document to the Secretary of the Army for final decision" where:

> (A) A hearing was held.
>
> (B) The facts involve reprisals under the Military Whistleblower Protection Act, confirmed by the DOD Inspector General (DODIG) under 10 U.S.C. 1034 and DODD 7050.6.
>
> (C) The ABCMR recommends relief but is not authorized to act for the Secretary of the Army on the application.

*Id.* § 581.3(g)(2)(ii).   In this case, the ABCMR did not hold a hearing, the case does not involve the Military Whistleblower Protection Act, and the Court has seen nothing

suggesting that the ABCMR is "not authorized to act for the Secretary of the Army."  *Id.* (That latter clause may refer only to 32 C.F.R. 581.3(g)(2)(i)(B)(3), regarding "appointment or promotion.")   In addition, even where the ABCMR's decision is not final and the Secretary of the Army "does not accept the ABCMR's recommendation, . . . that decision will be in writing and will include a brief statement of the grounds for denial or revision." 32 C.F.R. § 581.3(g)(3).  That provision *is* just like the like the Navy regulation at issue in *Strickland*.

Accordingly, considering the plain language of 32 C.F.R. § 581.3, it seems to this Court that the Secretary of Army may have either:  (a) relinquished his authority to overrule the ABCMR's decision in this case (in which case the Board's decision is final); and/or (b) did not issue a decision in compliance with the regulation.  The Court thus **ORDERS** as follows:

1. On or before November 7, 2024, the parties shall meet and confer regarding how this case should proceed, and the government shall file a status report containing the parties' position(s).  In particular, if the parties agree that this Court should proceed to the merits — and resolve this case via motions for judgment on the administrative record ("MJARs") — the government shall include in the status report either an agreed-upon briefing schedule or the parties' competing proposed schedules.

2. Assuming the government believes this case should proceed on the merits, the government shall further explain in its status report whether and how the government has complied with 32 C.F.R. § 581.3(g)(2)(i).  In particular, if the government contends that 32 C.F.R. § 581.3 permits the Secretary to reject the ABCMR's decision or recommendation, the government shall explain why the ABCMR's decision itself is not final here pursuant to that regulation.  If the government asserts that 32 C.F.R. § 581.3(g)(2)(ii)(C) applies, the government's status report shall explain why the ABCMR was "not authorized to act for the Secretary" here.

3. If the Army's administrative record contains a written decision that complies with 32 C.F.R. § 581.3(g)(3), the government shall include that decision with its status report filing.  If the government plans to rely in any way on a decision made by the DASA, discussed *supra*, the government's status report shall also cite to a regulatory provision — or provide a copy of the relevant delegation — demonstrating that the Secretary's authority pursuant to 10 U.S.C. § 1552 or 32 C.F.R. § 581.3 has been properly delegated to the DASA.

4.  The status report shall not exceed fifteen (15) pages, 12 pt., Times New Roman font, double-spaced, with 1-inch margins.

## V.   CONCLUSION

The government's motion to dismiss pursuant to RCFC 12(b)(1) and RCFC 12(b)(6) is **DENIED**.  The parties shall meet and confer, and the government shall file a status report, as directed herein.

**IT IS SO ORDERED**.

s/Matthew H. Solomson
Matthew H. Solomson
Judge