# In the United States Court of Federal Claims

No. 23-1633C

(Filed: March 31, 2026)

|  |  |
|---|---|
| **CARL L. WHELESS,** | ) |
| *Plaintiff,* | ) ) ) |
| **v.** | ) ) ) |
| **THE UNITED STATES,** | ) ) ) |
| *Defendant.* | ) ) ) |

*Michael Erich Silverman*, *Esq.*, Midway, GA, for Plaintiff.

*Evan Wisser*, U.S. Department of Justice, Civil Division, Washington, D.C., for Defendant. With him on the briefs were *Yaakov M. Roth*, Acting Assistant Attorney General, Civil Division, *Patricia M. McCarthy*, Director, and *Deborah A. Bynum*, Assistant Director. Of counsel was *Captain Ellen Denum*, Military Personnel Law, U.S. Army Litigation Division.

## <u>OPINION AND ORDER</u>

*SOLOMSON*, **Chief Judge.**

Currently before this Court are the parties' cross-motions for judgment on the administrative record ("MJARs"). Plaintiff, Mr. Carl L. Wheless, claims he was improperly denied Continuation on Active Duty ("COAD") status — and the associated financial benefits he would have received — after the Army Board for Correction of Military Records ("ABCMR" or the "Board") agreed that he met the eligibility criteria for such status. Mr. Wheless's records were never corrected because the then-acting Deputy Assistant Secretary of the Army ("DASA") disagreed with the ABCMR's decision, effectively overruling it. This Court previously denied the government's motion to dismiss, *Wheless v. United States*, 173 Fed. Cl. 215 (2024), and ordered supplemental

briefing both before, *id.* at 234, and after the parties filed cross-motions on the merits, *see* ECF No. 32.

Because Mr. Wheless has demonstrated that the DASA's decision is substantively inadequate, or resulted from a procedurally flawed process, this Court enters judgment for Mr. Wheless. This Court concludes, however, that this case must be remanded to the Army for further consideration and action not inconsistent with this opinion and order.

## I.   FACTUAL FINDINGS AND PROCEDURAL BACKGROUND[1]

The essential facts of this case are contained in this Court's previous decision, denying the government's motion to dismiss. *See Wheless*, 173 Fed. Cl. at 216-18. Because none of the parties dispute those facts, this Court adopts them as factual findings on the merits. Accordingly, this Court assumes the parties' familiarity with the factual summary set forth in that decision, *id.*, and recounts only a few facts from that order, supplemented by additional facts necessary to resolve this case on the merits.

The primary premise of Mr. Wheless's claim is that the ABCMR sided with him:

> After review of the application and all evidence, the Board determined that there is sufficient evidence to grant relief. The applicant's contentions, his military record, counsel's petition, and regulatory guidance were carefully considered. The governing regulation provides that at separation the service member's record will be used to enter accurate information when completing their DD Form 214. The Board agreed the applicant submitted a COAD application on 14 May 2014 *and on that date he met the eligibility criteria[,] thereby warranting correction in this case.*

---

[1] This background section constitutes this Court's principal findings of fact drawn from the administrative record. As explained in Section III *infra*, Rule 52.1 of the Rules of the United States Court of Federal Claims ("RCFC"), covering judgement on the administrative record, "is properly understood as intending to provide for an expedited trial on the record" and requires the Court "to make factual findings from the record evidence as if it were conducting a trial on the record." *Bannum, Inc. v. United States*, 404 F.3d 1346, 1353-54, 1356 (Fed. Cir. 2005). Citations to the Administrative Record, ECF No. 16, are denoted as "AR" followed by the page number indicated at the bottom right corner of the page.

AR 11 (emphasis added).  The ABCMR panel consisted of three members, and their decision to "grant full relief" was unanimous.  *Id.* ("The Board determined the evidence presented is sufficient to warrant a recommendation for relief.").

Accordingly, just as Mr. Wheless requested, *see* AR 3, the ABCMR "recommend[ed] that all Department of the Army records of [Mr. Wheless] be corrected," to include:  "[1] "retroactive reinstatement in the Regular Amry for the period from 22 July through 30 September 2014"; [2] "approv[ing] a length of service retirement (20 years active service) allowing receipt of Concurrent Retirement Disability Pay (CRDP)"; and [3] "reissuing the applicant's DD Form 214 to accurately capture adjusted length of service and retirement."[2]  AR 11.

The ABCMR's decision appears to have been rendered on April 17, 2020.  AR 3.[3]

On March 8, 2021, Dr. Holly Kibble — an Army Review Boards Agency ("ARBA") medical advisor — issued a "Medical Advisory Opinion" as part of a "post [ABCMR] review."  AR 16-17 ("Medical Advisory Opinion").  There are no procedures governing such a post-ABCMR review.  Nevertheless, Dr. Kibble's Medical Advisory Opinion "reviewed [Mr. Wheless's] records and supporting documents."  AR 16.  Based on that review, she concluded that Mr. Wheless's "[medical] conditions did not meet the eligibility criteria outlined in AR 635-40, paragraph 6-7(a)(2), because [Mr. Wheless's conditions] pose[d] a threat to the health and safety of the applicant and other Soldiers."  AR 17.  "Consequently," Dr. Kibble explained, Mr. Wheless's "medical conditions did not meet the COAD program criteria."  *Id.*

The Administrative Record contains no explanation of *why* Dr. Kibble's opinion was sought, *who* requested it, or *for what* purpose.

On May 17, 2021, the DASA — purporting to exercise authority delegated by the Secretary of the Army — issued a memorandum with this subject line: "Army Board for Correction of Military Records Record of Proceedings for Wheless, Carl L., AR20180013937."  AR 2.  The DASA indicated that she had "reviewed the findings, conclusions, and Board member recommendations."  AR 2.  There is zero reference to, or mention of, the Medical Advisory Opinion.

---

[2] "[M]ilitary discharge papers are officially known as DD Form 214 . . . . [T]he DD214 is proof of your military service [] and serves as the key to unlock benefits."  *See* https://www.military.com/benefits/records-and-forms/dd214.html.

[3] Tr. 5:1 — 6:8 (government counsel's confirming dates).

The DASA rejected the ABCMR's decision with this exceedingly terse statement:

> I find there is insufficient evidence to grant the Board's recommended relief. After reviewing the applicant's record and the circumstances of his retirement for permanent physical disability, I find that there is insufficient evidence of error or injustice to warrant a change to the records of the individual concerned. Therefore, under the authority of Title 10, United States Code, section 1552, I direct that the applicant's request for reinstatement and Continuation on Active Duty be denied.

AR 2. That is the sum total of the DASA's decision.

Later that same day, on May 17, 2021, the ABCMR transmitted a letter to Mr. Wheless, informing him that while the ABCMR "unanimously recommended full relief of your request[,]" the DASA "found there is insufficient evidence to grant relief." AR 1 ("This decision in your case is final.").

On September 22, 2023, Mr. Wheless filed his complaint in this Court. ECF No. 1.

The government moved to dismiss, ECF No. 5, which this Court denied, as noted *supra*. This Court further instructed the government to explain "whether and how the government has complied with 32 C.F.R. § 581.3(g)(2)(i)[,]" including "why the ABCMR's decision itself is not final here[.]" *Wheless*, 173 Fed. Cl. at 234. The government was also ordered to explain why the ABCMR was "not authorized to act for the Secretary," assuming 32 C.F.R. § 581.3(g)(2)(ii)(C) applies. *Id.* (quoting 32 C.F.R. § 581.3(g)(2)(ii)(C)).

On December 9, 2024, the government filed a status report, in which the parties proposed competing schedules for further proceedings, as instructed. ECF No. 13 at 1-4. The government also addressed this Court's questions from its order denying the motion to dismiss. *Id.* at 4-10. In a nutshell, the government asserted that "a correction board provides only a recommendation that the Secretary either adopts or reject as the final agency action on an application" for relief. *Id.* at 7 (discussing *Strickland v. United States*, 423 F.3d 1335 (Fed. Cir. 2005)). According to the government, 32 C.F.R. § 581.3 never makes the Board's decision the final decision of the Secretary. *Id.* at 9. To the contrary, the government asserts, 32 C.F.R. § 581.3(g)(3) "unambiguously confirms the Secretary's authority to review the board's recommendation and [to] direct action in every application for correction." *Id.*

On December 11, 2024, this Court set a briefing schedule for the parties' motions for judgment on the administrative record. ECF No. 14. Consistent with that schedule, the government filed the Administrative Record on February 7, 2025. ECF No. 16. The government subsequently filed an appendix (and a corrected appendix) of Army regulations. ECF Nos. 17-19. The parties cross-moved for judgment on the administrative record. The government filed its opening motion, including a motion to dismiss, on March 17, 2025. ECF No. 22 ("Def. MJAR"). Mr. Wheless filed his response in opposition and his cross-motion on April 8, 2025. ECF No. 24 ("Pl. MJAR"). On April 28, 2025, the government filed its response and reply brief. ECF No. 27 ("Def. Resp."). On May 4, 2025, Mr. Wheless filed his reply brief. ECF No. 30 ("Pl. Rep."). This Court held oral argument on July 9, 2025. *See* ECF No. 37 ("Tr.")

Following oral argument, on July 11, 2025, this Court issued a supplemental briefing order, instructing the government to answer yet additional questions regarding ABCMR rules and procedures, as well as factual questions about the processing of Mr. Wheless's case. ECF No. 32. On September 2, 2025, the government filed its supplemental brief. ECF No. 35.

## II.    JURISDICTION AND JUSTICIABILITY

Although the government continues to maintain that Mr. Wheless's claim is both untimely, ECF No. 13 at 10 n.3, and non-justiciable, Def. MJAR at 21-24, this Court already addressed these issues at length. *Wheless*, 173 Fed. Cl. at 218 ("The government does not dispute — and this Court finds — that we generally have jurisdiction to decide Mr. Wheless's money-mandating claim pursuant to the Tucker Act, 28 U.S.C. § 1491(a)."); *id.* at 220-26 (rejecting the government's statute of limitations argument); *id.* at 226 n.13 (noting the government's concession that this Court may review the DASA's rejection of a Board decision); *id.* at 227-31 (concluding that Mr. Wheless's claim is justiciable). This Court sees no reason to rehash that analysis here.

With regard to justiciability, however, this Court notes once again that the ABCMR found that that Mr. Wheless "submitted a COAD application on 14 May 204 and on that date *he met the eligibility criteria*[,] *thereby warranting correction in this case.*" AR 11 (emphasis added). Accordingly, the issue presented for this Court's decision is simply whether the DASA's rejection of that ABCMR decision was procedurally proper and not arbitrary and capricious. Answering those questions does not require this Court to apply "an inherently subjective standard that the Court cannot adjudicate." Def. MJAR at 24. The government's motion to dismiss, *see* Def. MJAR at 21-24, is thus **DENIED**.

## III.    STANDARD OF REVIEW

Ordinarily, Tucker Act claims — whether of the contract, money-mandating, or illegal exaction varieties — proceed before this Court "on a *de novo* basis."  *L & D Servs., Inc. v. United States*, 34 Fed. Cl. 673, 678 n.6 (1996) ("Any litigation of a [contract] claim . . . before this court is on a *de novo* basis and the contractor may rely upon evidence not considered by the contracting officer.").  That is, the trial court does not defer to an agency's fact-finding or conclusions, but instead receives new evidence, makes its own factual findings, and reaches an independent determination regarding whether a plaintiff has substantiated its claim by a preponderance of the evidence.  *See, e.g.*, *Ampersand Chowchilla Biomass, LLC v. United States*, 150 Fed. Cl. 620, 642 (2020) ("The Court reviews claims for tax refunds and [money-mandating statutory] claims . . . on a *de novo* basis."), *aff'd*, 26 F.4th 1306 (Fed. Cir. 2022); *Cherokee Gen. Corp. v. United States*, 150 Fed. Cl. 270, 283 (2020) ("Even where a contracting officer's legal opinion is fully explained . . ., it is not binding on the government in judicial proceedings (which are *de novo*) and it cannot override the language of the contract itself." (citing *Wilner v. United States*, 24 F.3d 1397, 1401–02 (Fed. Cir. 1994))); *Cencast Servs., L.P. v. United States*, 94 Fed. Cl. 425, 453 (2010) ("In general, a tax refund suit is a *de novo* proceeding and any subsidiary factual findings of the IRS are given no weight by the court."), *aff'd*, 729 F.3d 1352 (Fed. Cir. 2013); *Cnty. of Suffolk v. United States*, 19 Cl. Ct. 295, 299 (1990) ("The Claims Court typically considers allegations that a party did not fulfill its obligations under a contract on a *de novo* basis.") (citations omitted); *Woog v. United States*, 48 Ct. Cl. 80, 94 (1913) ("[T]he statute under which we are taking jurisdiction requires us to make an independent investigation and to afford relief irrespective of the findings of any board.").[4]

Where Congress wants this Court to apply a different, more deferential standard of review, Congress knows how to issue such instructions.  The most common example is, of course, the Administrative Procedure Act's arbitrary and capricious standard of review, which Congress expressly applied to actions challenging government procurement-related decisions pursuant to 28 U.S.C. § 1491(b).  *See* 28 U.S.C. § 1491(b)(4)

---

[4] *But see Fla. Home Med. Supply, Inc. v. United States*, 131 Fed. Cl. 170, 177–78 (2017) (contrasting a breach of contract case — where "[t]he evidence that plaintiffs may offer is governed by the relevant rules of this court, and is not limited to the information previously provided to [the agency]" — and "[t]he court's review of an agency decision," which "is limited to an administrative record and is conducted under a deferential 'arbitrary, capricious, contrary to law, or unsupported by substantial evidence' standard" (citations omitted)).

("In any action under this subsection, the courts shall review the agency's decision pursuant to the standards set forth in section 706 of title 5.").[5]

Military pay claims pursuant to the Tucker Act — including disability retirement cases — are money-mandating claims.[6]  In such cases, Congress has neither required this Court to apply the APA's standard of review by reference to that statute, nor otherwise directly imposed the "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" formulation.  Nevertheless, "[a]s Mr. Justice Holmes commented . . . [,] 'a page of history is worth [a] volume of logic.'"  *Walz v. Tax Comm'n of City of New York*, 397 U.S. 664, 675–76, (1970) (quoting *New York Trust Co. v. Eisner*, 256 U.S. 345, 349 (1921)).  And history makes quite clear that our Court, and our predecessor and appellate tribunals, have consistently applied the arbitrary and capricious standard of review since at least 1954.  *Gordon v. United States*, 121 F. Supp. 625, 629 (Ct. Cl. 1954) ("By this application plaintiff invoked the jurisdiction of the Army Board on Correction of Military Records and was bound by the terms thereof unless the resulting action of the board was arbitrary or capricious, etc., or was in violation of some other substantive right."); *see Brown v. United States*, 396 F.2d 989, 991 (Ct. Cl. 1968) ("Since Congress has vested the Service Secretaries (acting on the recommendation of the various physical disability and correction boards) with such discretion in determining eligibility for disability-retired pay, we have always adhered to [the APA standard] of review." (footnotes omitted)).[7]  The Supreme Court also has long endorsed this deferential

---

[5] Congress has imposed the arbitrary and capricious standard in other instances as well.  *See, e.g.*, 50 U.S.C. § 4215(h)(1) ("A claimant may seek judicial review of a denial of compensation under this section solely in the United States Court of Federal Claims, which shall review the denial upon the administrative record and shall hold unlawful and set aside the denial if it is found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."); 42 U.S.C. § 300aa-12(e) (providing that "the United States Court of Federal Claims shall have jurisdiction to undertake a review of the record of [vaccine injury] proceedings and may thereafter . . . set aside any findings of fact or conclusion of law of the special master found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law").

[6] *Friedman v. United States*, 158 F. Supp. 364, 376 (Ct. Cl. 1958) ("[T]he sort of 'review' contemplated in an action to recover lost pay in the Court of Claims is an original suit for a money judgment and not a review looking to the alteration or correction of an official military record or to the compelling of official action by an officer of an executive department.  And such 'reviews' by this court to determine whether or not pay has illegally been withheld from a member or former member of the military services, have long been sanctioned by this court and the Supreme Court." (citing cases)).

[7] This is true even where "resort to a correction board is not mandatory[.]"  *Lewis v. United States*, 458 F.3d 1372, 1376 (Fed. Cir. 2006) (citing *Martinez v. United States*, 333 F.3d 1295, 1305 (Fed. Cir. 2003), and explaining that "where, as here, a service member has elected to pursue relief before a

standard of review, although it has never concluded that the APA *literally* applies to these cases. *See Chappell v. Wallace*, 462 U.S. 296, 303 (1983) (explaining that correction board "decisions are subject to judicial review and can be set aside if they are arbitrary, capricious or not based on substantial evidence" (citing *Grieg v. United States*, 640 F.2d 1261 (Ct. Cl. 1981) and *Sanders v. United States*, 594 F.2d 804 (Ct. Cl. 1979))).[8]  Indeed, Supreme Court precedent supporting the application of the arbitrary and capricious standard of review to military pay cases apparently pre-dates the APA.  *See Wales v. United States*, 130 F. Supp. 900, 904 (Ct. Cl. 1955) (holding that arbitrary and capricious standard of review applies to BCMR findings and that "the doors of this court are always open to grant relief to a party aggrieved by the action of an executive or administrative officer which is arbitrary or capricious" because "[t]he Supreme Court has long recognized the right of the court to review such action" (internal citations omitted) (citing *Dismuke v. United States*, 297 U.S. 167, 171–72 (1936))).

Perhaps because the APA does not generally apply to Tucker Act claims,[9] binding authority from the Court of Claims "permitted the taking of *de novo* evidence by the [trial court]" in military pay cases. *Beckham v. United States*, 375 F.2d 782, 785 (Ct. Cl. 1967);[10] *see Brown*, 396 F.2d at 991–92 ("We have also, since we first began dealing with disability retirement two decades ago, regularly considered evidence over and above that

---

corrections board, we have reviewed the board's decision to determine whether it is arbitrary, capricious, unsupported by substantial evidence, or contrary to law"(other citations omitted)).

[8] *Cf. Clinton v. Goldsmith*, 526 U.S. 529, 530 (1999) ("A servicemember claiming something other than monetary relief may challenge a BCMR's decision . . . as final agency action under the [APA]" in the district courts, or "[i]n the instances in which a claim for monetary relief may be framed, a servicemember may enter the Court of Federal Claims with a challenge . . . under the Tucker Act[,]" 28 U.S.C. § 1491.).

[9] *See Bowen v. Massachusetts*, 487 U.S. 879 (1988); *District of Columbia v. United States*, 67 Fed. Cl. 292, 305 (2005) (contrasting "two waivers of sovereign immunity" — "[t]he first is found in the Tucker Act, 28 U.S.C. § 1491(a)(1) (2000), the foundation of this court's jurisdiction, and the second is found in the [APA], 5 U.S.C. §§ 701–706 (2000), which gives United States district courts jurisdiction over certain claims 'seeking relief other than money damages' against the United States, *id.* § 702" (footnote omitted)).

[10] *See Beckham*, 375 F.2d at 785 ("In determining the arbitrariness, capriciousness, or insubstantiality of an administrative decision, it is not necessary that the review always be restricted to the record before the administrative body. . . . This has not prevented the court from applying its substantial evidence test to the findings of the Board.  All that this procedure has done is to expand our substantiality test.  We do not ask if the Board decision is supported by substantial evidence upon an inspection of the record, but instead, we ask if the decision meets the test when compared with all available evidence — that is both the record and the *de novo* evidence.").

presented before the administrative boards if a party wishes to offer it. . . . This coupling of the substantial-evidence standard with the acceptance of  new evidence has not . . . encroached on the administrative process."). In *Brown*, the Court of Claims reasoned that the military disability administrative process "as a whole, is not designed to collect and evaluate for itself all the evidence bearing on the issue of disability, nor is it geared to produce records comparable to those of the regulatory agencies." 396 F.2d at 996. Thus, "[t]he character of the administrative process in military disability-retirement cases . . . strongly suggests the propriety of our established practice of accepting *de novo* evidence in this area." *Id.*

Notwithstanding that *Beckham* and *Brown* are consistent with the money-mandating nature of military pay claims — and even though Congress never applied the APA to military pay claims in Tucker Act cases — our appellate court, the United States Court of Appeals for the Federal Circuit, in a split panel decision,[11] concluded that "it has become well established that judicial review of decisions of military correction boards *is conducted under the APA*." *Walls v. United States*, 582 F.3d 1358, 1367 (Fed. Cir. 2009) (emphasis added and footnote omitted).[12] The Federal Circuit thus applied APA cases and procurement protest decisions to find that our review of military pay claims "is generally limited to the administrative record." *Walls*, 582 F.3d at 1367–68 (Fed. Cir. 2009) (discussing *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 743-4 (1985); *Axiom Res. Mgmt., Inc. v. United States*, 564 F.3d 1374, 1381 (Fed. Cir. 2009); and *Impresa Construzioni Geom. Domenico Garufi v. United States*, 238 F.3d 1324, 1338 (Fed. Cir. 2001)).[13] Judge Wolski's

---

[11] Judge Newman dissented at length. *See Walls*, 582 F.3d at 1369–82 (Newman, J., dissenting) ("The *Brown* ruling continues to be the law of this circuit." (footnote omitted) (citing *Bray v. United States*, 515 F.2d 1383 (Ct. Cl. 1975), amongst other cases). Judge Newman maintained that "[n]o authority disturbs the long-standing rulings that because of the nature of correction board proceedings, augmentation of the administrative record is permissible" and that "[t]he APA does not exclude this approach." *Walls*, 582 F.3d at 1376.

[12] *See also Pearl v. United States*, 111 Fed. Cl. 301, 303 n.1 (2013) (noting that "[a]lthough the APA [is] explicitly cited only in the portion of the Tucker Act pursuant to which this court exercises jurisdiction in bid protests, *see* 28 U.S.C. § 1491(b)(4), 'it has become well established that judicial review of decisions of military corrections boards is conducted under the APA' standard of review" (quoting *Walls,* 582 F.3d at 1367)).

[13] *Walls* relied on two earlier Federal Circuit cases for the proposition that this Court applies the APA in reviewing decisions of military correction boards: *Metz v. United States*, 466 F.3d 991 (Fed. Cir. 2006), and *Fisher v. United States*, 402 F.3d 1167 (Fed. Cir. 2005). *See Walls*, 582 F.3d at 1367 n.11. But neither case mentions the APA even a single time. *Metz*, consistent with precedent, simply noted that "the Court of Federal Claims reviews the Board's action under the same standard as any other agency action," while acknowledging that, fundamentally, military pay claims are money-mandating claims under the Tucker Act. 466 F.3d at 995–98 (citation omitted).

summary of the standard of review, however, is more accurate: "[t]he Court reviews the decision of a Secretary acting through a Correction Board according to a standard *borrowed from* the [APA]." *Brooks v. United States*, 65 Fed. Cl. 135, 140 (2005) (emphasis added and citation omitted).[14]

The upshot of this history is that our Court resolves military pay claims via cross-motions for judgment on the administrative record, pursuant to RCFC 52.1. That process "is properly understood as intending to provide for an expedited trial on the record" and requires the Court "to make factual findings from the record evidence as if it were conducting a trial on the record." *Bannum*, 404 F.3d at 1353-54, 1356 (applying this standard in a bid protest case); *see Doyon v. United States*, 58 F.4th 1235, 1242 (Fed. Cir. 2023) (reviewing, in a military pay case, the trial court's decision on motions for judgment on the administrative record).[15] The Court asks whether, given all the disputed and undisputed facts, a plaintiff has met its burden of proof under the applicable standard of review, based on the administrative record evidence. *See Bannum*, 404 F.3d at 1355–57.

Similarly, *Fisher* recognized the money-mandating nature of a disability retirement pay claim and explained the standard of review based on "controlling precedents," but did not invoke the APA. 402 F.3d at 1174, 1180 ("The cases are consistent that this review is conducted under a deferential standard of review, *essentially the standard under which administrative agency decisions are reviewed*[.]" (emphasis added)).

[14] The Federal Circuit's predecessor, the Court of Claims, similarly borrowed "[APA]-type review" for other money-mandating claims. *Foote Mineral Co. v. United States*, 654 F.2d 81, 84–85 (Ct. Cl. 1981) (applying "[APA]-type review" to a refund claim brought pursuant to 43 U.S.C. § 1734(c) (1976), and citing a military pay case, *Sanders*, 594 F.2d at 804 (Ct. Cl. 1979)). As to whether it makes sense to apply APA case law wholesale in such cases, Judge Wolski observed that the more recent "convention of restricting review to the administrative record seems to conflict with the express holding of the Federal Circuit that plaintiffs challenging Correction Board determinations are 'entitled' to supplement this record with additional evidence." *Brooks*, 65 Fed. Cl. at 150 n.22 (quoting *Heisig v. United States*, 719 F.2d 1153, 1157 (Fed. Cir. 1983)); *see also Joslyn v. United States,* 110 Fed. Cl. 372, 388 (2013) ("Both the record and the *de novo* evidence are considered to determine whether the decision of the military disability evaluation board was supported by substantial evidence." (citing *Beckham*, 375 F.2d at 785)).

[15] *See also Young v. United States*, 497 F. App'x 53, 58–59 (Fed. Cir. 2012) (explaining that military pay claims and this Court's review of military correction board decisions may be decided via motions for judgment on the administrative record pursuant to RCFC 52.1, which "provides a procedure for parties to seek the equivalent of an expedited trial on a 'paper record, allowing fact-finding by the trial court'" (footnote omitted) (quoting *Bannum*, 404 F.3d at 1356)); *Acevedo v. United States*, 216 F. App'x 977, 979 (Fed. Cir. 2007) (explaining that this Court, in reviewing decisions of the Army Board for the Correction of Military Records, "is required to make factual findings under [RCFC] 52.1 from the record as if it were conducting a trial on the record" (footnote omitted) (citing *Bannum,* 404 F.3d at 1355–57)).

Where, as here, "we are called to review not the action of a correction board, but action by the Secretary [or his delegee] . . . to overrule that correction board[,] . . . the substantial-evidence standard generally applies[.]" *Strand v. United States*, 951 F.3d 1347, 1351 (Fed. Cir. 2020). "That is, we must 'determine whether the Secretary's rejection of the Board recommendation was arbitrary or capricious, unsupported by substantial evidence, or otherwise contrary to the law.'" *Id.* (quoting *Strickland*, 423 F.3d at 1343).[16]

## IV.   DISCUSSION: THE DASA'S REJECTION OF THE ABCMR'S DECISION IS ARBITRARY, CAPRICIOUS, OR OTHERWISE CONTRARY TO LAW

This Court assumes, only for the purposes of this decision, that: (1) the DASA in this case had the authority — based on a delegation originating from the Secretary of the Army — to effectively overrule the ABCMR's decision; and (2) the DASA's decision represents the only final agency action subject to this Court's review.[17]  Applying the standard of review, however, this Court concludes Mr. Wheless is entitled to judgment but not the immediate monetary relief he seeks.

### A. The DASA's Decision Is Improper Even Assuming the DASA Considered the Medical Advisory Opinion

The government asserts that "the DASA's decision was supported by substantial evidence" because "the DASA's review of Mr. Wheless's application included consideration of [the] memo provided by the ARBA medical advisor[.]"  Def. MJAR at 25.  For starters, the government cites no evidence in the Administrative Record for the proposition that the DASA reviewed, or even saw, the Medical Advisory Opinion, AR 16-17.  Moreover, the government is wrong in assuming that, had the DASA considered the Medical Advisory Opinion, such consideration would support the reasonableness of the DASA's decision.  On the contrary, the DASA's consideration of the Medical Advisory Opinion would undermine the government's position here.  That is, even

---

[16] With respect to the scope of *relief*, however — just as in a procurement protest action pursuant 28 U.S.C. § 1491(b) — neither Federal Circuit precedent nor this Court's rules preclude the consideration of evidence outside of the agency's record. *See Aero Spray, Inc. v. United States*, 156 Fed. Cl. 548, 578 n.45 (2021) ("The Court's consideration of such extra-record evidence is appropriate when evaluating prejudice or the propriety of injunctive relief." (citations omitted)); RCFC 52.1, Rules Comm. Notes (2006) ("Cases filed in this court frequently turn only in part on action taken by an administrative agency.  In such cases, the administrative record may provide a factual and procedural predicate for a portion of the court's decision, while other elements might be derived from a trial, an evidentiary hearing, or summary judgment or other judicial proceedings.").

[17] Plaintiff does not challenge either of those premises.

assuming that the DASA relied upon the ARBA Medical Advisory Opinion, the DASA's decision was contrary to law *because of that reliance*, as discussed *infra*.

Section 1552 of Title 10 of the United States Code requires that claims for the correction of military records are decided, in the first instance, by a civilian board: "corrections shall be made by the Secretary *acting through boards of civilians* of the executive part of that military department." 10 U.S.C. § 1552(a)(1) (emphasis added). Assuming the Secretary of the Army retained his or her authority to reject an ABCMR decision in a particular Board matter and, thus, to issue the agency's final decision — *i.e.*, the Secretary did not delegate such authority to the ABCMR for it to issue the agency's final decision — this Court may reject the Secretary's decision only in limited circumstances. *Boyd v. United States*, 207 Ct. Cl. 1, 8 (1975).[18]  In particular, "if he has exercised his discretion arbitrary, capriciously, in bad faith, contrary to substantial evidence, *or where he has gone outside the board record,* or fails to explain his actions, or violates applicable law or regulations[,] [t]hen we will not hesitate to set him right." *Id.* at 8-9 (emphasis added) (citing cases). Somewhat recently, in *Strand* the Federal Circuit expressly "reaffirm[ed] that [*Boyd*] standard[.]" 951 F.3d at 1353 (citing *Boyd*, 207 Ct. Cl. at 8-9).

This Court rejects the government's view that the DASA was permitted to consider the Medical Advisory Opinion that the ABCMR never saw and was not part of the record before it. Indeed, the government's *own briefs* undermine its position.

First, the government all but admits that the *Boyd* rule remains good law; the government even cites *Boyd* in its MJAR. Def. MJAR at 24. Second, the government quotes *Moehl v. United States* for the proposition that "[t]he secretary's decision is a de novo consideration of the *entire record*." Def. MJAR at 25 (emphasis added) (quoting *Moehl v. United States*, 34 Fed. Cl. 682, 690 (1996)). But the "entire record" here means the record the ABCMR developed, and not some new record. Indeed, *Moehl* explicitly confirms that the "entire record" means the record developed by the ABCMR. *See Mohel*, 34 Fed. Cl. at 960 ("Should the secretary fail to explain his decision, his action will be upheld on review if it is supported by the record and evidence **presented to the board**." (emphasis added) (citation omitted)). Third, as Mr. Wheless points out, Pl. MJAR at 17, the government ignores the fact that *Moehl* quoted the language from *Boyd* precluding the Secretary from going "outside the board record[.]" *Moehl*, 34 Fed. Cl. at 690 (quoting *Boyd*, 207 Ct. Cl. at 8-9). Fourth, the government relies on *Selman v. United States*, 723 F.2d

---

[18] All references in this decision to the "Secretary of the Army" or "the Secretary" include his or her delegee(s).  The DASA wields such delegated authority.  *See* ECF No. 13-2 at 2.

877 (Fed. Cir. 1983), Def. MJAR at 25, but the Federal Circuit in that case expressly interpreted Section 1552 just like this Court: that when the statute "requires that the Secretary act *through* a civilian board," it means "the Secretary *must* base his decision on the record as the board presents it to him." 723 F.2d at 880-81 (second emphasis added) (concluding "[t]here is no indication here that the Secretary acted on any evidence not presented to him by the board"); *see* Def. Resp. at 4 (acknowledging the adverse language from *Selman*).

While the government does "not disput[e] that that's what the cases say as the framework" for this Court's review, Tr. 17:7-8, the government asserts that "the statement about going outside the Board record as a general matter is dicta and has never actually been applied in an appellate holding." Tr. 13:24 — 14:1; *see* Def. Resp. at 5. The government agrees, however, that if this Court "follow[s] that language" from *Boyd* (and other cases), the government loses. *See* Tr. 16:22-25 ("THE COURT:  I assume, though, you're going to agree that if I follow that language, . . . you lose. [GOVERNMENT COUNSEL]: Correct, Your Honor.").

Although that case language may be dicta (at least in our circuit) — because no binding appellate decision apparently has been decided on the basis that the Secretary improperly considered extra-record materials that were not before the Board — no court decision appears to take any issue with the *Boyd* rule. Indeed, as noted above, the *Boyd* language has been oft repeated, including in other circuit and trial court decisions. *See, e.g.*, *Horn v. Schlesinger*, 514 F.2d 549, 553 (8th Cir. 1975) ("[A]lthough the Secretary is authorized, in a proper case, to overrule the Board's recommendations, he cannot do so arbitrarily, but must act on either explicitly stated policy reasons, or upon *evidence presented in the record made to the Board*." (footnotes omitted) (emphasis added)); *Hodges v. Callaway*, 499 F.2d 417, 423 (5th Cir. 1974) ("[T]hough the Secretary may overrule the Board's recommendations for relief, he cannot do so arbitrarily; if he rejects the Board's recommendations, he must provide either explicitly stated policy reasons, or *his action must be supported by the record and evidence presented to the Board*." (emphasis added) (citations omitted)); *Waudby v. United States*, 2010 WL 324521, at *8 n.6 (D.N.J. Jan. 19, 2010) (noting that "courts have *routinely* overturned final Secretary action, irrespective of the Board's initial decision, if '[the Secretary] has exercised his discretion arbitrarily, capriciously, in bad faith, contrary to substantial evidence, or *where he has gone outside the board record*, or fails to explain his actions, or violates applicable law or regulations'" (emphasis added) (quoting *Boyd*, 207 Ct. Cl. at 4.)). And the government acknowledges that *Boyd* relied on yet earlier precedents. Def. Resp. at 5.

13

In sum, this Court finds the *Boyd* rule persuasive, particularly as its rationale is anchored in statutory language, as explained *supra*. Furthermore, this Court rejects the government's view because it would lead to absurd results. If a military secretary were able to render a decision on an application for correction of records without any regard to a board's record or decision, that would nullify the entire purpose of the congressionally mandated civilian boards. *See Neal v. Sec'y of Navy & Commandant of Marine Corps*, 639 F.2d 1029, 1042 (3d Cir. 1981) ("[W]hen Congress established civilian boards to review military personnel decisions, it did not provide for boards limited, as the names may erroneously imply, to the clerical function of making technical correction of records of military personnel."). Put differently, the government's view contains no limiting principle. If the government is correct, a service secretary would be permitted to gather and consider new information that a civilian board never considered, and that in turn would mean a secretary could effectively dispense with a board altogether. The government cites no authority for that view of the statutory framework. *See* 10 U.S.C. § 1552.

Accordingly, to the extent the DASA considered the Medical Advisory Opinion at issue — which was not part of the ABCMR's record when it decided the case in Mr. Wheless's favor — the DASA's decision must be set aside.[19]

### B. Even if the DASA Could Properly Consider New Evidence that the Board Did Not Consider, the DASA's Consideration of *Dr. Kibble's* Medical Advisory Opinion Was Improper

In the alternative — and again assuming the DASA actually considered the Medical Advisory Opinion, AR 16-17 — the agency violated 10 U.S.C. § 1552(g), rendering the DASA's decision arbitrary, capricious, or otherwise contrary to law.

Section 1552(g) requires as follows:

> Any *medical advisory opinion* issued to a board established
> under [10 U.S.C. § 1552](a)(1) with respect to a member or

---

[19] In that regard, the Medical Advisory Opinion in this case may be improper for yet another, somewhat related reason: the government admits that there is no regulatory provision or policy document that contemplates a so-called "post Board review," AR 16-17. *See* ECF No. 35-1 at 4 (¶ 2.c.) (the then-Director of the ABCMR explaining that he "likely . . . made the decision to refer the case to the medical team for a review" but "cannot recall my precise reasoning"); *id.* (¶ 2.d.) ("There are no specific policies related to a post-board review other than the DASA Review policy."). Neither the DASA review policy, *id.* at Exhibit A, nor the ARBA medical review policy, *id.* at Exhibit C, specifically addresses post-board medical reviews.

> former member of the armed forces who was diagnosed while serving in the armed forces as experiencing a mental health disorder shall include the opinion of a *clinical psychologist or psychiatrist* if the request for correction of records concerned *relates to* a mental health disorder.

10 U.S.C. § 1552(g)(1) (emphasis added).

Although the government asserts otherwise, Mr. Wheless's request for correction of records "relates to" a mental health disorder, as explained *infra*. Moreover, contrary to the government's position, Dr. Kibble's Medical Advisory Opinion *was in fact* a "medical advisory opinion." Accordingly, and because Dr. Kibble — who issued the Medical Advisory Opinion — is not a psychologist or psychiatrist, Pl. MJAR at 14,[20] her medical advisory opinion violated 10 U.S.C. § 1552(g)(1).[21]

In *Dean v. Department of Labor*, the Federal Circuit agreed with the Merit Systems Protection Board that the phrase "relating to" is properly interpreted consistent with "its common meaning, *i.e.*, 'stands in some relation to,' 'has bearing on,' 'concerns,' or 'has a connection with.'" 808 F.3d 497, 501 (Fed. Cir. 2015) (quoting *Dean v. Office of Pers. Mgmt.*, 115 M.S.P.R. 157, 165 (2010)). Similarly, *in Todd Construction, L.P. v. United States*, the Federal Circuit held that the "'relating to' language" in a particular Federal Acquisition Regulation provision "is a term of substantial breadth." 656 F.3d 1306, 1312 (Fed. Cir. 2011). In that regard, the Federal Circuit explained:

> The term "related" is typically defined as "associated; connected." *See* Random House Webster's Unabridged Dictionary 1626 (2d ed. 1998); *see also* Black's Law Dictionary 1288 (6th ed. 1991) (defining "related" as "[s]tanding in relation; connected; allied; akin"); Oxford English Dictionary 1695 (3d ed. 1947) (defining "relation" as "any connection,

---

[20] The government does not contest this assertion. *See* Tr. 74:1-7 ("[GOVERNMENT COUNSEL]: If the Court is going to hold that [10 U.S.C. § 1552](g)(1) applies . . . [and] that this ARBA document is a medical advisory opinion . . . , we would agree that Ms. Kibble is not a psychologist or psychiatrist, and so she was not permitted to issue that advisory opinion.").

[21] While the plain text of 10 U.S.C. § 1552(g)(1) only covers "medical advisory opinion issued to a **board**," (emphasis added), and here Dr. Kibble's opinion was issued directly to the DASA, the government does not assert that the Army can evade the requirement of 10 U.S.C. § 1552(g)(1) merely because of that. Indeed, the government agreed that it is "not going to ask this Court to hold that [] because [the Medical Advisory Opinion] was [issued] to the DASA and not the Board, that this [statutory provision] is inapplicable[.]" Tr. 75:19-21.

correspondence, or association, which can be conceived as naturally existing between things").

The Supreme Court has interpreted the term "related to" broadly. *See, e.g., Celotex Corp. v. Edwards*, 514 U.S. 300, 307–08, 115 S.Ct. 1493, 131 L.Ed.2d 403 (1995) (holding that Congress' jurisdictional grant to bankruptcy courts to hear proceedings "related to" a bankruptcy case "suggests a grant of some breadth" and includes, inter alia, suits between third parties which have an effect on the bankruptcy estate); *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 383–84, 112 S.Ct. 2031, 119 L.Ed.2d 157 (1992) (holding that preemption provision of Airline Deregulation Act—preempting laws "relating to rates, routes, or services" of any air carrier—should be broadly construed); *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 96–97, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983) (holding that state law "relates to" an employee benefit plan and is therefore preempted by ERISA "if it has a connection with, or reference to, such a plan"). Similarly, in *Tyco Healthcare Group LP v. Ethicon Endo–Surgery*, 587 F.3d 1375, 1378 (Fed. Cir. 2009), we recognized that "[i]n general, 'related to' means one thing has some … connection to another thing," and "[i]n legal parlance," the term has "similar breadth."

*Todd Construction, L.P.*, 656 F.3d at 1312.

Given the breadth of the phrase "relates to," even a cursory review of the government's statement of facts in its MJAR demonstrates that the nature of Mr. Wheless's record corrections claim "*relates to* a mental health disorder" pursuant to 10 U.S.C. § 1552(g)(1) (emphasis added). *See* Def. MJAR at 11-14 (discussing Mr. Wheless's "mental health conditions"). Indeed, the government explains that "the Army determined that Mr. Wheless's unfitting conditions [at the time] — depression and generalized anxiety disorder and obstructive sleep apnea — posed a risk to himself and his fellow soldiers" and that is why "the Army refused to consider his COAD request." Def. MJAR at 19.

This Court does not need a medical degree to conclude that depression and anxiety — the underlying conditions that drove the Army's determination that Mr. Wheless posed a risk to himself and his fellow soldiers — are mental health conditions. The

16

government does not seriously suggest otherwise.  To be clear, the fact that the Army, in evaluating Mr. Wheless, used the terms "behavior health" or "BH" — instead of "mental health" — matters not.  AR 16-17.  And, once again, the government does not contend otherwise.

Moreover, the government's assertion that the Army's overall "assessment" of "whether Mr. Wheless posed a risk to the health or safety of himself or his fellow soldiers" is "a non-medical assessment" is likewise without support and strikes this Court as patently erroneous, if not frivolous, in the absence of any authority for that claim.  Def. Resp. at 8.  At oral argument, the government finally more-or-less conceded this issue as a factual matter.  Tr. 29:8-12 ("THE COURT:  But the key point that the ARBA [Medical Advisory Opinion] provides[,] whether or not Plaintiff was a danger to himself or others, focuses on some mental health issues, correct?  [GOVERNMENT COUNSEL]: That's right.").

In sum, the substantive issue at the center of Mr. Wheless's claim to the Board was whether, despite his separation from the Army due to a permanent disability — including for *mental health conditions* — Mr. Wheless nevertheless qualified for COAD.  The ABCMR agreed that he did.  AR 11.  In contrast, the Medical Advisory Opinion concluded that Mr. Wheless's various medical conditions "did not meet the COAD program criteria."  AR 17.

Even assuming Mr. Wheless's claim before the Board "relates to a mental health disorder," the government next posits the following argument for why Dr. Kibble's Medical Advisory Opinion is *still* outside the reach of 10 U.S.C. § 1552(g)(1):

> [A]lthough we acknowledge . . . that the ARBA medical advisor's memo is titled "Medical Advisory Opinion," the text of the memo makes clear that it is not providing any sort of medical evaluation or diagnosis. The memo simply summarized the medical notes and diagnoses already in the record in assessing whether Mr. Wheless posed a risk to the health or safety of himself or his fellow soldiers, a non-medical assessment.

Def. Resp. at 8.  This argument borders on the frivolous for the simple reason that the statute in question, 10 U.S.C. § 1552(g)(1), literally applies to a "*medical advisory opinion*[,]" (emphasis added) — and that is literally the title of Dr. Kibble's memo(!), as the government acknowledges. Def. Resp. at 8.  Moreover, the idea that Dr, Kibble's Medical Advisory Opinion was not a medical evaluation is undermined by the government's

repeatedly describing the Medical Advisory Opinion as the product of a "medical review."  *See* ECF No. 35-1 at 3-4 (¶ 2)

Additionally, the government points to no statutory language — or any authority whatsoever — requiring a "medical evaluation or diagnosis," Def. Resp. at 8, to trigger the statutory requirement that the Medical Advisory Opinion include "the opinion of a clinical psychologist or psychiatrist." 10 U.S.C. § 1552(g)(1).

In sum, Dr. Kibble's medical advisory opinion violated 10 U.S.C. § 1552(g)(1) because: (1) Mr. Wheless's request for correction of records "relates to" a mental health disorder; (2) Dr. Kibble's Medical Advisory Opinion was a bonafide *medical opinion*; and (3) Dr. Kibble, who issued the Medical Advisory Opinion, is not a psychologist or psychiatrist, Pl. MJAR at 14.  The result is that, if the DASA *did* rely on Dr. Kibble's opinion, the DASA's resulting decision is procedurally, if not substantively, defective.[22]

## C. The Medical Advisory Opinion Was Improper Even Assuming the DASA Could and Did Consider It

Even assuming the DASA had expressly adopted the entire analysis contained in the Medical Advisory Opinion, the DASA's reliance upon it would have been arbitrary and capricious.  That is because — as the government critically concedes, in "agree[ment] with Mr. Wheless" — "the medical advisor's final reference to actions that occurred in January 2015, AR 17, are *not* supported by his service medical records and could not have been relevant to the Army's conclusion in June 2014[.]"  Def. Resp. at 6 n.1 (emphasis added).  Thus, the government agrees that "to the extent the Court determines that it cannot discern what decision the DASA would have reached absent the inclusion of this statement in the medical advisor's memo, the appropriate remedy would be to remand this matter. . . ."  *Id.*  That is exactly what this Court concludes.  *See Strand v. United States*, 706 F. App'x 996, 1000 (Fed. Cir. 2017) ("But because the Secretary relied on a combination of intertwined reasons, and [plaintiff] has shown that at least one of those reasons is not supported by substantial evidence, the record is not clear as to whether the Secretary would still reach the same conclusion. Thus, the Secretary's decision must be reversed.").

There is a yet another merits-based issue with the DASA's decision which requires this Court to set aside that decision — again assuming that the DASA relied on

---

[22] The government does not contend that such an error is harmless.  *See* Tr. 74:18-20 (government counsel's agreeing that "[t]his would be a violation of the information that could be provided under 1552(g)(1)"); Tr. 76:3-6 (government counsel's agreeing that "[i]f you're in (g)(1), the result is the same as applying the *Boyd* dicta/rule, that it should not have been considered by the DASA. The ARBA memo should not have been considered by the DASA.").

the Medical Advisory Opinion at all. The critical substantive fact question with respect to Mr. Wheless's COAD eligibility is whether the reason he was found unfit for active duty was because he posed a risk to the health and safety of himself or other soldiers. Army Reg. 635-40 ¶ 6-5. If Mr. Wheless's underlying disabilities did *not* pose such risks, which is precisely what the ABCMR explicitly decided, he would be entitled to COAD, just as the ABCMR determined. AR 9. In that regard, the Medical Advisory Opinion itself acknowledges that the Army, during its medial review of Mr. Wheless, found that "Mr. Wheless was *not currently* a risk to self or others." AR 17 (emphasis added) (citing Army records). In an attempt to sidestep that glaring issue, the Medical Advisory Opinion concludes that several of Mr. Wheless's underlying medical conditions (*e.g.*, suicidal ideation) had a risk of "be[ing] elevated from time to time," thus posing a risk of danger to himself or others. *Id.* But as the government acknowledged with respect to the events in January 2015, the question is whether the service member was a risk to the safety of himself or others *at the time of discharge*, not if such risk *may* present itself in the *future*. *See* Def. Resp. at 6 n.1.

Moreover, the record may well be devoid of evidence that Mr. Wheless posed a risk to others because of some underlying mental health condition. The ARBA Medial Advisory Opinion indicates that Mr. Wheless's Obstructive Sleep Apnea ("OSA") was, in part, the cause for Mr. Wheless's "weapons restriction" by the Army. AR 17. In that regard, Dr. Kibble explained that, despite treatment, Mr. Wheless experienced "daytime sleepiness [and] therefore the OSA condition posed a risk" if Mr. Wheless were carrying a weapon "during specific required functions." *Id.* Critically, however, only *if* Mr. Wheless were to carry a weapon while suffering from OSA would he pose a risk to himself or others. OSA, in and of itself, however, is apparently not a condition that poses a risk to the safety of oneself or others.

The point is that there is no evidence that Mr. Wheless was a danger to himself or others at the time of discharge, either because of suicidal ideation or because of his OSA. The fact that he was not permitted to carry a weapon due to his OSA does not show that Mr. Wheless was inherently dangerous to himself or others. If this Court were to follow Dr. Kibble's logic, we would have to conclude that anytime a servicemember is under some influence which prohibits him or her from operating machinery, for example, he or she would be considered a risk to himself or others *even* when *refraining from* operating that machinery. If that is going to be the rule, the government will have to explain it better than it has here.

19

### D. The DASA's Decision Is So Devoid of Analysis that It Violates a Governing Regulation and Is Arbitrary and Capricious

Even if the DASA *did not* rely on the Medical Advisory Opinion, the DASA's decision violates 32 C.F.R. § 581.3(g)(3)(i). That ABCMR regulatory provision requires that when the Secretary (or his delegee) "does not accept the ABCMR's recommendation" — again, assuming that the ABCMR's decision was not itself the final agency action here — "that decision will be in writing and *will* include a *brief statement of the grounds for denial*[.]" 32 C.F.R. § 581.3(g)(3)(i) (emphasis added). The DASA's decision further fails to withstand the APA standard of review.

Here, the DASA issued a written decision, AR 2, but it included no explanation or "grounds for denial" of the relief Mr. Wheless sought and the ABCMR determined he was eligible for. The DASA did not address any specific fact-finding the ABCMR made, nor did he explain why the ABCMR's conclusion on the merits was unsupported. Nor did the DASA explain why Mr. Wheless was properly — or even reasonably — denied COAD status, or what record evidence she was relying upon to reach a different conclusion from the ABCMR. Indeed, as noted above, there is no evidence in the Administrative Record that the DASA saw, let alone considered, the ARBA Medical Advisory Opinion.[23]

The government, in its MJAR, asserts that "substantial evidence in the record supported the DASA's conclusion that *Mr. Wheless's unfitting condition posed a risk to himself or other soldiers*." Def. MJAR at 26 (emphasis added). But this assertion is, quite literally, false. The DASA never said such a thing, as the government later admitted during oral argument.[24] Even if the DASA had made that exact statement, however, it

---

[23] The Medical Advisory Opinion was addressed to the "Director, Case Management Division." AR 16. Not only is the government unable to explain why such an opinion was requested, or definitively demonstrate who requested it, ECF No. 35-1 at 4 (¶¶ 2.c, 2.e), the government admitted that the Case Management Division "is not involved in the boarding process." *Id.* at 5 (¶ 2.g).

[24] Tr. 52:5-24 ("THE COURT: I'm willing to give you a pass. I'm not going to fight about whether this is a misrepresentation or not. I'm just saying this is wrong. When you refer to the DASA's conclusion that 'Mr. Wheless' unfitting condition posed a risk to himself or other soldiers,' that simply does not exist. [GOVERNMENT COUNSEL]: I would admit that was shorthand, Your Honor. That's not what the DASA memo itself says. THE COURT: Okay. . . . I just want to make sure we're all on the same page. . . . There is no such conclusion here. [GOVERNMENT COUNSEL]: No, I agree with the statement or the discussion here that the DASA's conclusion was 'I find insufficient evidence to correct the record.'").

would have been merely conclusory, and still would not satisfy the requirement to provide the "grounds for denial," 32 C.F.R. § 581.3(g)(3)(i).

Put differently, the question for this Court is: did the DASA *articulate what evidence the DASA relied on and how* that evidence led to a particular conclusion. This Court will not guess nor allow counsel to "fill in the blanks." *See Remmie v. Mabus*, 898 F. Supp. 2d 108, 121 (D.D.C. 2012) ("[S]omething more than [a] bare, conclusory statement was required. The result the Board reached here may have been unobjectionable and based on a correct interpretation of the BCNR's regulations, but the Secretary is required to show both Plaintiff and this Court how it got there."); *Thornton v. Wormuth*, 2025 WL 27351, at *3-4 (D.D.C. Jan. 3, 2025) (concluding the Acting DASA violated 32 C.F.R. § 581.3(g)(3)(i) where his decision "is completely devoid of the 'grounds' for [his] rejection of the ABCMR's recommendation[,]" and holding that the government's "briefing cannot be [a] discussion of the previously-articulated rationale for the challenged action when there was no previously-articulated rationale[,]" and "[d]efendant's briefing is therefore impermissible *post hoc* rationalization which cannot save the [DASA's] woefully deficient decision" (citation omitted)).

The DASA's failure to provide "a brief statement of the grounds for denial" of relief not only violates 32 C.F.R. § 581.3(g)(3)(i), but also the APA. *Moskowitz v. Driscoll*, 2025 WL 901241, at *6 (D.D.C. Mar. 25, 2025). In *Moskowitz*, the DASA reached "a different conclusion" from the board on the merits of a specific argument. *Moskowitz*, 2025 WL 901241, at *6. Thus, the district court reasoned, the DASA "was required to provide a 'brief statement of the grounds' for that decision." *Id.* (quoting 32 C.F.R. § 581.3(g)(3)(i)). But "[h]e did not." *Moskowitz*, 2025 WL 901241, at *6. Accordingly, the district court held that the DASA's "failure to provide 'a reason that a court can measure, albeit with all due deference, against the arbitrary or capricious standard of the APA,' requires remand." *Id.* (quoting *Kreis v. Sec'y of Air Force*, 866 F.2d 1508, 1514-15 (D.C. Cir. 1989)).

This Court agrees with the district court in *Moskowitz*: "[W]here the [DASA] fails to offer any explanation at all for his decision to overturn a finding of the Corrections Board, the court lacks the information it requires to evaluate his decision-making process. A decision so opaque cannot be understood as being anything other than arbitrary and capricious." *Moskowitz*, 2025 WL 901241, at *6. In this case, the DASA merely invoked the grounds of "insufficient evidence" — twice — to reject the ABCMR's conclusions. AR 2. But such an explanation, if you can even call it that, is conclusory in the extreme — a paradigmatic example of *ipse dixit.* Moreover, repeating the same inadequate conclusion

does not add up to a rationale or grounds for rejection of the ABCMR's decision; zero plus zero is still zero.

In sum, this Court's assessment of the DASA's decision in this case mirrors the district court's view of the DASA's decision in *Thornton v. Wormuth*:

> The [DASA] provided no explanation for his decision other than stating he "reviewed the evidence presented, findings, conclusions, and Board member recommendations" and found "sufficient evidence to grant partial relief." That is not nearly enough. Indeed, the Court is left scratching its head as to how the [DASA] reached his decision and why he disagreed with the ABCMR's recommendation!

2025 WL 27351, at *3 (internal citation to the administrative record omitted).

The government, relying on the Federal Circuit's decision in *Selman*, 723 F.2d at 881, asserts that this Court should presume that the DASA in Mr. Wheless's case relied upon his service records *and* the ARBA Medical Advisory Opinion. Def. Resp. at 9; Tr. 10:20-21 (government counsel asserting that "[w]e're relying on the presumption of administrative regularity"). While the government argued that "[t]he Court is permitted to presume that the DASA's decision was based on the underlying information in the record, including Mr. Wheless'[s] service records *and* the Army medical advisor's memo[,]" Tr. 10:25-11:4 (emphasis added), the government later conceded that "there's no express reference to any particular documents in the underlying record in the DASA [decision] document." Tr. 11:14-16. This Court rejects the government's argument because "inference and implication are not enough under 32 C.F.R. § 581.3(g)(3)(i)." *Browder v. Wormuth*, 2024 WL 5168281, at *5 (D.D.C. Dec. 19, 2024).

More troubling still, the government later conceded during oral argument that it does not believe the DASA relied on records beyond the Medical Advisory Opinion. Tr. 31:25 — 32:5 ("THE COURT: You don't really expect me to believe that the DASA reviewed the medical records, do you? [GOVERNMENT COUNSEL]: No, but we believe the DASA did review the opinion provided by the medical advisor, which synthesized and summarized the relevant portions.").[25] But at the risk of repeating itself, this Court

---

[25] *See* Tr. 27:8-12 ("Turning back, though, to the DASA memo, we have not cited anything in here other than the general presumption that the DASA is presumed to have read and relied upon the underlying material in the record to support the decision."). This is particularly problematic where the ABCMR determined "[c]oncerning [Mr. Wheless's] behavioral health, he is not a

points out that there is no evidence whatsoever that the DASA even reviewed the Medical Advisory Opinion.

*Selman* is also readily distinguishable — and in a manner that favors Mr. Wheless. In *Selman*, the Federal Circuit concluded that "the Secretary's failure to specific his reasons" violated 32 C.F.R. § 723.7 and, indeed, was "not trivial and . . . [thus] in error." 723 F.2d at 881 ("We do not sanction such actions."). The Federal Circuit "only [held] that, *in this case*, the error is harmless." *Id.* (emphasis added). In contrast, the government here, in Mr. Wheless's case, does *not* even attempt to make a harmless error argument. And it is the government's burden to demonstrate harmless error. *Keltner v. United States*, 165 Fed. Cl. 484, 517 (2023) (explaining that where a plaintiff has demonstrated error, "the government has the burden to demonstrate harmless error" (citing cases)); *see also Wisotsky v. United States*, 69 Fed. Cl. 299, 307 n.7 (2006) ("The burden to produce such substantial evidence that the error was harmless is on the government." (citation omitted)); *Berkley v. United States*, 59 Fed. Cl. 675, 685 (2004) ("The government . . . bear[s] the burden of proving harmless error[.]").

In sum, the DASA's written decision violated 32 C.F.R. § 581.3(g)(3)(i) and, even in the absence of that provision, does not satisfy the APA's arbitrary and capricious standard of review. *Golden IT, LLC v. United States*, 177 Fed. Cl. 118, 136 (2025) ("[T]he APA requires the government to show its work." (citation omitted)); Tr. 11:17-25 (government counsel's agreeing that "there's no explanation of why the Secretary – or the DASA saw the record evidence differently" from the Board).

Mr. Wheless is entitled to relief.

## V.    RELIEF

Mr. Wheless has succeeded on the merits of his claim and, thus, is entitled to judgment. This Court cannot direct the correction of his records, however — or enter a monetary judgment — because, at this juncture, this Court can only say that the DASA's opinion is void as it currently stands. In such a case, as the government argues, the proper course of action is to remand the matter for the agency's further consideration — including, possibly, the issuance of a new DASA decision — not inconsistent with this opinion and order.

---

danger to himself or others." AR 9. If the DASA rejected that key finding, the DASA was required to provide a supporting explanation.

23

The conundrum this Court faces is to whom the remand should be directed.  The government's view, of course, is that the DASA may issue a new decision.  *Cf.* Def. Resp. at 6 n.1.  But that is not true if the Secretary and/or the DASA lack the authority to issue a final decision on behalf of the agency in lieu of the unanimous ABCMR's decision.  This Court twice directed the government to address that question (and related issues), *see* ECF No. 13; ECF No. 35, but this Court is still unsatisfied that the government has a coherent approach to reading the regulation(s).

The government maintains that the applicable statutory and regulatory scheme "unambiguously confirms the Secretary's authority to review the board's recommendation and direction action in every application for correction."  ECF No. 13 at 9.  According to the government, the ABCMR's decision "cannot constitute final agency action[.]"  *Id.*  The government asserts that if this Court were to hold that an ABCMR's decision may constitute the agency's final action, pursuant to 32 C.F.R. § 581.3(g)(2), that "would improperly render section [§ 581.3(g)(3)] entirely superfluous."  *Id.*  In short, the government maintains that all ABCMR decisions are simply recommendations that the Secretary has "plenary authority to review[.]"  *Id.* (discussing 32 C.F.R. § 581.3(g)(3)).

This Court remains unconvinced for several reasons.

*First*, the ABCMR governing regulation provides that the Board "[i]n appropriate cases . . . *directs* or recommends correction of military records[.]"  32 C.F.R. § 581.3(c)(2)(i) (emphasis added) (discussing "ABCMR functions").  Thus, at least in some cases, the Board issues more than a mere recommendation; rather, the Board may "direct[]" agency action.  *Id.*

*Second*, subparagraph 32 C.F.R. § 581.3(g) provides that "except as otherwise provided, *the ABCMR acts for the Secretary of the Army*" in certain cases.  32 C.F.R. § 581.3(g)(2)(i) (emphasis added).  That is the language of delegation.  The government agreed.  Tr. 23:3-5 (government counsel's agreeing that "to some extent, the reg[ulation] itself is a delegation to the Board in certain cases").  To the extent the Secretary also issued subsequent delegations to other subordinate officials, ECF Nos. 13-1, 13-2, those delegations are subject to the codified regulation (*i.e.*, the Secretary necessarily delegated whatever authority was *not* assigned directly to the Board).

*Third*, there *are* classes of Board cases where the regulation expressly reserved to the Secretary final decisional authority.  In particular, 32 C.F.R. § 581.3(g)(2)(ii) indicates that "[t]he ABCMR will forward [its] decisional document to the Secretary of the Army for final decision in any" of three specified categories.  *Id.*  The implication, of course, is

that the ABCMR will ***not*** forward a decisional document to the Secretary in every case.[26] Indeed, the government admits the "Secretary, or his delegee, does not review every single case[.]"  ECF No. 35 at 2 (¶1.a) (internal citation omitted).[27]  But if some ABCMR decisions are not forwarded to the Secretary for review, how do those decisions become final agency action?  The government does not explain the mechanics.[28]  Moreover, and crucial to this Court's conundrum with respect to Mr. Wheless's relief, the government in this case "do[es] *not* assert that the Army's decision falls into one of the categories mandating Secretarial review under section 581.3(g)(2)(ii)."   ECF No. 13 at 9 n.2 (emphasis added).[29]

---

[26] In *Strickland*, the Federal Circuit explained that "[t]he Board may make a recommendation on the disposition of the case, but nevertheless *must* forward the entire record to the Secretary."  423 F.3d at 1339 (emphasis added) (citing 32 C.F.R. § 723.6 (2004)).  According to *Strickland*, "[a]fter reviewing the record and the Board's recommendation, the Secretary or his designee makes the one and only actual decision."  *Id.*  *Strickland* does not govern this case for at least two reasons.  First, as the Federal Circuit later recognized, the "[t]he ***sole*** issue [in *Strickland* was] whether the Assistant Secretary acted outside his statutorily-granted powers when he rejected the recommendation of the [Board for Corrections of Naval Records]."  *Nicely v. United States*, 23 F.4th 1364, 1370 (Fed. Cir. 2022) (emphasis added) (quoting *Strickland*, 423 F.3d at 1337).  Indeed, the trial court's decision in *Strickland* was entirely focused on the statutory language.  *See Strickland v. United States*, 61 Fed. Cl. 443, 444 (Aug. 9, 2004) ("This case presents a question of statutory interpretation[.]").  Second, *Strickland* concerned the Navy's board process.  The Federal Circuit's decision mentions the other services' regulations in passing, but it's all classic dicta, as the Army regulations were not remotely at issue.

[27] This admission is impossible to square with the Federal Circuit's dicta in *Strickland* that a corrections board must forward the entire record to the Secretary for a final decision, *see supra* note 26.

[28] The government asserts that "the findings and recommendations of the ABCMR will become the final decision of the Secretary only if the Secretary takes no further action."  ECF No. 35-1 at 2 (¶ 1.a); *see also* Tr. 21:13 — 21:24.  But that *ipse dixit* doesn't cut it.  How does any Army official — or, better yet, the servicemember — know when an ABCMR is considered final?  How long does the ABCMR decision have to sit before it is considered final (under the government's view)?  These are important questions for, amongst other things, ripeness and statute of limitations questions.  *See, e.g.*, *Walker v. Wormuth*, 2024 WL 2279828, at *2 (W.D. Tex. May 2, 2024) (noting that "the Code of Federal Regulations provides that ABCMR's decision is final when it '[d]enies any application'" and explaining that the ABCMR's 2012 decision was a final agency action, and thus the statute of limitations to review that decision started running in 2012 (quoting 32 C.F.R § 581.3(g)(2)(i))), *report and recommendation adopted*, 2024 WL 2279194 (W.D. Tex. May 20, 2024), *aff'd*, No. 24-50448, 2024 WL 4708981 (5th Cir. Nov. 7, 2024).  The government offers no explanation and no authority to support its position.

[29] This Court notes a possibly significant discrepancy between 32 C.F.R. § 581.3(g)(2)(i)(B) and an analogous provision contained in Army Regulation 15-185 (§ 2-13.a(2)).  The precise problem is

*Fourth*, although the government asserts that the Secretary's plenary authority in every Board matter derives from 32 C.F.R. § 581.3(g)(3), ECF No. 13 at 9, it is the government's reading of the regulation that effectively deletes an operative phrase: the one providing that, in certain cases, "the ABCMR acts for the Secretary of the Army, and . . . is final[.]"  32 C.F.R. § 581.3(g)(2)(i).  The government offers no explanation for what that phrase means.  And, in any event, the government certainly cannot be permitted to read that regulatory phrase as applying only to the Board's denial of correction applications, 32 C.F.R. § 581.3(g)(2)(i)(A).  *See, e.g., McKinney v. Wormuth*, 5 F.4th 42, 45 (D.C. Cir. 2021) ("The Board's decision to deny an application constitutes final agency action. 32 C.F.R. § 581.3(g)(2)(i)(A)."); *cf. Wolfe v. Geren*, 2008 WL 2116537, at *1 (D.D.C. May 20, 2008) (noting that "[t]he regulation excepts certain circumstances where 'the ABCMR acts for the Secretary of the Army, and an ABCMR decision is final,'" but concluding that "a majority vote for a hearing . . . is not one of those circumstances" (citing 32 C.F.R. § 581.3(g)(2))).

None of this is to suggest that the Secretary could not re-write and reissue the regulation consistent with the maximum breadth of the statute, 10 U.S.C. § 1552, to remove all final decisional authority from the Board, just as *Strickland* would clearly permit. 423 F.3d at 1339.  But the Secretary has not done so.

Nor is this the first trial court to find these decisional authority issues difficult to decipher.  In *Hall v. Wormuth*, for example, the United States District Court for the District of Columbia essentially noted the same problem:

> Under 32 C.F.R. § 581.3, the ABCMR's decision is final when
> it either denies an application or grants an application subject

---

that the provision in the Code of Federal Regulations designates the ABCMR's decision as final agency action on behalf of the Secretary where the Board "[g]rants any application in whole or in part without a hearing" **and** three additional criteria are met (those criteria are listed with the conjunctive "and").  32 C.F.R. § 581.3(g)(2)(i)(B).  In Army Regulation 15-185, however, the identical provision lacks conjunctive language, a formulation mirrored in the DASA's ARBA Policy (Sept. 6, 2016), *see* ECF No. 35 at Exhibit A.  The government makes no attempt to reconcile these various formulations or to explain which formulation should govern.  But given the government's concession that 35 C.F.R. § 581.3(g)(2)(ii) does not apply here, ECF No. 13 at 9 n.2, this case is almost certainly within § 581.3(g)(2)(i).  That is because § 581.3(g)(2)(ii)(C) retains for the Secretary's decision any case in which "[t]he ABCMR recommends relief but is *not* authorized to act for the Secretary of the Army on the application" (emphasis added).  So, if subparagraph (g)(2)(ii) does not apply, that means that the ABCMR "*is* authorized to act for the Secretary."  That would seem to be correct because § 581.3(g)(2)(ii) governs when "[t]he ABCMR will forward the decision document to the Secretary . . . for final decision[.]"  32 C.F.R. § 581.3(g)(2)(ii).

> to certain enumerated conditions, including that the relief awarded by the ABCMR was "as recommended by the proper staff agency in an advisory opinion." The record does not indicate, and the parties do not clarify, exactly why the ABCMR's initial decision was not a final agency action.

2024 WL 3443529, at *6 n.4 (D.D.C. July 16, 2024) (quoting 32 C.F.R. § 581.3(g)(2)(i)(B)(1)); *see also Villarreal-Dancy v. United States Dep't of the Air Force*, 633 F. Supp. 3d 19, 26-32 (D.D.C. 2022); *Villarreal-Dancy v. United States Dep't of the Air Force*, 2021 WL 3144942, at *7 (D.D.C. July 26, 2021).

Accordingly, and in light of these remaining authority questions, this Court remands this case back to the Army Review Boards Agency, generally, to consider how this case was — and, going forward, should be — processed, including whether the ABCMR's decision in this case constitutes final agency action pursuant to 32 C.F.R. § 581.3(g)(2). If, on remand, the ARBA determines that the Board's decision was, indeed, final agency action, this case will be at an end. If, on the other hand, the ARBA determines that the Secretary (or his or her delegee) should re-review the Board's decision, and if a second decision rejecting the Board's conclusion is issued, Mr. Wheless may file a new complaint in this Court if warranted (along with a related case notice, *see* RCFC 40.2(a)).[30] In the meantime, Mr. Wheless has squarely won this round.

## VI.   CONCLUSION

Plaintiff's MJAR is **GRANTED**. The government's MJAR is **DENIED**. Pursuant to 28 U.S.C. § 1491(a)(2) and RCFC 52.2, this matter is hereby **REMANDED** to the Army Review Boards Agency for further action not inconsistent with this opinion and order, a certified copy of which the Clerk shall serve on:

> Army Review Boards Agency (ARBA)
> 251 18th Street South, Suite 385
> Arlington, VA 22202-3531

---

[30] Because Mr. Wheless did not move for judgment on the basis that the Secretary (or his or her delegee) was precluded from reviewing the Board's decision, *see supra* note 17, this Court cannot simply enter a money judgment in favor of Mr. Wheless — based on the Board's decision — and direct the Army to correct his records, accordingly.

and via email: army.arbainquiry@army.mil.  Counsel of record for the United States shall also ensure that this opinion and order is promptly transmitted to the appropriate ARBA official(s), including agency counsel.

The ARBA shall comply with this remand order — including deciding whether the Army will correct Mr. Wheless's records based on the ABCMR's decision — **on or before Friday, June 30, 2026**.

This Court will not retain jurisdiction to superintend the remand process.

Accordingly, the Clerk of the Court is directed to enter final **JUDGMENT** for Plaintiff.

**IT IS SO ORDERED**.

s/Matthew H. Solomson
Matthew H. Solomson
Chief Judge

28